DEWEY C. SWANEY v. GEORGE NEWTON CONSTRUCTION COMPANY, EMPLOYER; UNITED STATES CASUALTY COMPANY, CARRIER

No. 6810IC331

(Filed 13 August 1969)

1. **Master and Servant §§ 87, 89— G.S. 97-10.1 and G.S. 97-10.2 — effective date**

   G.S. 97-10.1 and G.S. 97-10.2 do not apply to an injury which occurred prior to 20 June 1959, the effective date of those statutes. Ch. 1324, Session Laws of 1959.

2. **Master and Servant §§ 77, 89— discontinuance of lifetime workmen's compensation benefits — recovery from third party tort-feasor**

   Where plaintiff employee, who is entitled to workmen's compensation benefits for life under G.S. 97-29 and G.S. 97-41, and his employer's compensation insurance carrier divided the amount recovered from the third party tort-feasor in accordance with a written agreement approved by the Industrial Commission, [former] G.S. 97-10 does not authorize the Industrial Commission to allow the insurance carrier to discontinue making compensation payments to the injured employee until the accrued benefits exceed the amount recovered from the third-party tort-feasor, and the Industrial Commission erred in allowing such discontinuance of compensation payments.

3. **Master and Servant § 77— workmen's compensation award — change of condition**

   G.S. 97-47, which grants the Industrial Commission power to review an award on the grounds of a change in condition, is not applicable where there is no evidence of any change in the physical capacity to earn or in the earnings of the injured employee.

4. **Master and Servant § 77— workmen's compensation award — change of condition**

   Change of condition, as used in G.S. 97-47, refers to a substantial change, after a final award of compensation, of the injured employee's physical capacity to earn and in some cases, of his earnings.

BROCK, J., concurring in result.

APPEAL by plaintiff employee from North Carolina Industrial Commission, Opinion and Award of 17 and 30 May, and 7 June 1968.

On 4 April 1957 plaintiff employee was severely injured as a result of an accident which arose out of and in the course of his employment. Among other injuries, his spinal cord was severed, making him a paraplegic and totally and permanently disabled. The United States Casualty Company (carrier), the workmen's compensation insurance carrier for his employer, commenced making the weekly compensation and medical payments to plaintiff as required by the North Carolina Workmen's Compensation Act and continued making these payments until May 1967, when it stopped making further payments.

On 9 June 1967 the carrier filed a motion before the North Carolina Industrial Commission for an order allowing it and the employer to suspend making any further payments of workmen's compensation benefits to or on behalf of the plaintiff until such time as such additional benefits thereafter becoming due to the plaintiff should total $69,136.98, which sum represented that portion of the recovery which had been effected from a third party tort-feasor which had been paid to plaintiff and his attorneys. A hearing was held on this motion before the Chairman of the Industrial Commission on 4 October 1967, and on 11 December 1967 the Chairman filed an order making findings of fact which may be summarized as follows: As a result of his injuries which arose out of and in the course of his employment, plaintiff has been rated permanently and totally disabled and is entitled to compensation for life. The defendant employer and its insurance carried accepted liability and entered into an agreement to pay plaintiff compensation. Thereafter plaintiff brought an action against the third party tort-feasor whose negligence had caused plaintiff's injuries, as a result of which plaintiff was awarded damages in the amount of $125,000.00, plus interest, making a total recovery in the amount of $138,237.79. The parties entered into a written agreement for division of this recovery which plaintiff had effected against the third party tort-feasor under which it was agreed that the total recovery should be equally divided between the plaintiff and the defendant insurance carrier, the fee of the plaintiff's attorneys for their services in the third party tort-feasor action to be paid out of the total recovery in proportion to the amount which each party was receiving. This agreement was submitted to the North Carolina Industrial Commission for its approval and was approved by order signed by its Chairman on 12 March 1964. The carrier continued to pay plaintiff

compensation and medical expenses until a total of $69,136.98 was reached, making a total of $138,273.79 paid the plaintiff in compensation and out of the amount received by him from the recovery against the third party tort-feasor.

On these findings of fact the Chairman of the Industrial Commission concluded as a matter of law that "(u)nder the provisions of G.S. 97-10, G.S. 97-10.1, and G.S. 97-10.2, the defendant employer is not obligated to pay compensation and medical expenses for the plaintiff until such time as they exceed the amount recovered from the third party tort-feasor." The Chairman "approved" defendant's "claim" to stop compensation "until such time as the accrued compensation and medical shall exceed the amount received from the third party tort-feasor."

In apt time plaintiff excepted to this order and appealed to the full Commission pursuant to G.S. 97-85. The matter was heard before the full Commission on 3 May 1968, and on 17 May 1968 the Commission entered an order overruling plaintiff employee's exceptions and adopting as its own the findings of fact and conclusions of law contained in the order of its Chairman and affirming such order. This order of the full Commission also contained a recital to the effect that each party had paid out one-third of the amount which each had received from the third party recovery to pay plaintiff's attorney's fees incurred in effecting that recovery, and since defendant insurance carrier "is now receiving credit for more than its disbursement of the third party recovery, defendants are liable for a greater proportion of the attorney fee." The Commission ordered the defendant carrier to "reimburse the plaintiff one-third of the compensation and medical expenses incurred since the defendant's insurance carrier stopped paying the compensation and medical expenses, and to continue to pay such one-third of the compensation and medical expenses until such time as the amount of the third party recovery has been exhausted."

Thereafter, on 30 May 1968 and again on 7 June 1968, without any further hearing, the Commission issued orders amending its 17 May 1968 order, the final order directing the defendant carrier to continue to pay to plaintiff "one-third of the compensation and medical expenses until such time as the sum of $23,045.66 or one-third of the plaintiff's share of the third party recovery has been exhausted."

From the order, opinion and award of the Industrial Commission filed 17 May 1968 as amended by its orders filed 30 May 1968 and 7 June 1968, plaintiff appealed.

SWANEY v. CONSTRUCTION CO.

*Clark & Huffman, by Richard Clark, and McLendon, Brimm, Brooks, Pierce & Daniels, by Hubert Humphrey, for plaintiff appellant.*

*Teague, Johnson, Patterson, Dilthey & Clay, by C. Woodrow Teague and G. S. Patterson, Jr., for defendant appellees.*

PARKER, J.

By appropriate assignments of error appellant challenges the order of the Industrial Commission which authorized reduction in the amount of the workmen's compensation benefits payable to him and the conclusions of law upon which that order was based. In the opinion and award made by the Chairman of the Industrial Commission, which were adopted with modification by the full Commission, the Chairman had concluded as a matter of law that "(u)nder the provisions of G.S. 97-10, G.S. 97-10.1 and G.S. 97-10.2, the defendant employer is not obligated to pay compensation and medical expense for the plaintiff until such time as they exceed the amount recovered from the third party tort-feasor." Based on this conclusion of law, which was adopted as its own by the full Commission, the Commission entered its order which, as finally amended, in effect authorized the defendant carrier to reduce to one-third the amount of weekly compensation and medical benefits which it would otherwise be obligated to pay to the plaintiff, the reduction in such payments to remain in effect "until such time as the sum of $23,045.66 or one-third of the amount of the plaintiff's share of the third party recovery has been exhausted." While the exact meaning of the quoted portion of the Commission's order is not altogether clear, presumably the Commission intended that the reduction in the amount of the payments should remain in effect until the total of the reduced payments should equal the amount of the attorney's fees which had been paid by the plaintiff out of that portion of the third party recovery (one-half) which had been distributed to the plaintiff by agreement between the parties approved in 1964 by the Commission. It is, however, unnecessary for us to determine the exact meaning of the Commission's order, since in our view the Industrial Commission was without power, under the circumstances of this case, to authorize any reduction in the amount of the compensation and benefit payments to which plaintiff was entitled under the North Carolina Workmen's Compensation Act.

For most industrial injuries compensable under the North Carolina Workmen's Compensation Act, the Act provides limitations in the period of time during which payments are to be made and in

the total amount of such payments. However, G.S. 97-29 contains the following:

> "In cases in which total and permanent disability results from paralysis resulting from an injury to the brain or spinal cord or from loss of mental capacity resulting from an injury to the brain, compensation, including reasonable and necessary nursing services, medicine, sick travel, medical, hospital, and other treatment or care *shall be paid during the life of the injured employee* without regard to the (maximum limitations of time and amount.)" (Emphasis added.)

G.S. 97-41 contains the following:

> "In cases where permanent total disability results from paralysis or loss of mental capacity caused by an injury to the brain or spinal cord, compensation *shall be payable for the life of the injured employee* as provided by G.S. 97-29." (Emphasis added.)

The defendant employer and its insurance carrier have never questioned that plaintiff's accident arose out of and in the course of his employment, that the injuries he received thereby rendered him totally and permanently disabled, and that this permanent disability resulted from paralysis caused by an injury to his spinal cord. No question is raised, therefore, but that plaintiff's condition brings him squarely within the language of G.S. 97-29 and G.S. 97-41 and that he is entitled to be paid the compensation and to receive the benefits provided by the Workmen's Compensation Act throughout his life and without regard to any limitation in the total amount.

[1] The opinion and award of the Chairman of the Industrial Commission, which was adopted by the full Commission, expressly found that "plaintiff has been rated totally and permanently disabled and is entitled to compensation for life." Nevertheless he concluded as a matter of law that "(u)nder the provisions of G.S. 97-10, G.S. 97-10.1, and G.S. 97-10.2, the defendant employer is not obligated to pay compensation and medical expenses for the plaintiff until such time as they exceed the amount recovered from the third party tort-feasor." At the outset we observe that the provisions of G.S. 97-10.1 and G.S. 97-10.2 are not applicable to plaintiff's injuries. These two sections were enacted by Chap. 1324 of the 1959 Session Laws. That Act deleted G.S. 97-10 as it then existed and substituted in lieu thereof G.S. 97-10.1 and G.S. 97-10.2. Section 2 of that Act expressly provided that it shall not apply to any injury occurring before the ratification thereof. The Act was ratified on

20 June 1959. Plaintiff's injuries occurred on 4 April 1957. There-
fore, G.S. 97-10.1 and G.S. 97-10.2 are not applicable in this case.

**[2]**     Nor does G.S. 97-10 as it existed prior to the 1959 Act sup-
port the Commission's conclusion of law. G.S. 97-10 provided:

> "The rights and remedies herein granted to an employee
> where he and his employer have accepted the provisions of this
> article, respectively, to pay and accept compensation on ac-
> count of personal injury or death by accident, shall exclude all
> other rights and remedies of such employee, his personal rep-
> resentative, parents, dependents or next of kin, as against his
> employer at common law, or otherwise, on account of such in-
> jury, loss of service, or death: Provided, however, that *in any
> case where such employee,* his personal representative, or other
> person *may have a right to recover damages for such injury,*
> loss of service, or death *from any person other than the em-
> ployer, compensation shall be paid in accordance with the pro-
> visions of this chapter."* (Emphasis added.)

The statute then went on to provide that after the Industrial Com-
mission had issued an award or the employer or his carrier had ad-
mitted liability in writing, the employer or his carrier should have
the exclusive first right to commence an action for damages on ac-
count of the employee's injuries; if the employer failed to com-
mence action within six months of the injury, the employee might
do so; and in either event any amount recovered was to be applied
first to the payment of court costs and attorneys' fees, and "the re-
mainder or so much thereof as is necessary shall be paid to the em-
ployer to reimburse him for any amount paid and/or to be paid by
him under the award of the industrial commission; if there then
remain any excess, the amount thereof shall be paid to the injured
employee . . ." The insurance carrier which assumed the liability
of the employer was subrogated to the rights and duties of the em-
ployer.

It is clear that G.S. 97-10 as it existed at the time of plaintiff's
injuries furnishes no support for the Commission's action in order-
ing reduction in the amount of the compensation payable to plain-
tiff. That section provided exactly to the contrary. By express lan-
quage the statute directed that in any case where the employee
might have a right to recover damages for his injuries from any
person other than his employer, *"compensation shall be paid in ac-
cordance with the provisions of this chapter."*

Appellees contend in their brief that it was and is a "basic
premise" of our North Carolina Workmen's Compensation Act,

both before and after the 1959 amendment, "that the employer and/or carrier is always entitled to full and complete reimbursement (with the exception of attorneys' fees) from a third-party recovery for any and all amounts required to be paid under the Workmen's Compensation Act." But even such an assumed "basic premise" does not support the conclusion that the employer or carrier has any right to effect such reimbursement by reducing or refusing to make the payments of compensation and benefits which the Act requires to be paid to the injured employee. That there is no such right is made clear by the above quoted express language of the very statutory section to which appellees' point as establishing their assumed "basic premise."

[3, 4]  G.S. 97-47, which grants the Industrial Commission power to review an award on the grounds of a change in condition, is not here applicable. No evidence was introduced and there has been no finding that there has been any change in condition. Change of condition, as those words are used in the statute, refers to a substantial change, after a final award of compensation, of the injured employee's physical capacity to earn and in some cases, of his earnings. *Pratt v. Upholstery Co.,* 252 N.C. 716, 115 S.E. 2d 27; *Smith v. Swift & Co.,* 212 N.C. 608, 194 S.E. 106. Defendant insurance carrier does not even suggest that there has been any change in the physical capacity to earn or in the earnings of the injured employee. All of the evidence is that he remains totally and permanently disabled.

[2]  In 1963 the plaintiff employee, after protracted litigation undertaken on his own initiative (see *Swaney v. Steel Co.,* 259 N.C. 531, 131 S.E. 2d 601) finally succeeded in effecting a substantial recovery from the third party tort-feasor whose negligence had caused his injuries. In November 1963 the judgment against the third party, with interest, was paid into the office of the clerk of superior court. The amount of this recovery was considerably larger than the total of the payments which the defendant insurance carrier had at that time been required to pay to the injured employee in workmen's compensation and medical benefits. The parties negotiated with each other in an effort to reach agreement as to the distribution of this recovery. They did reach agreement, which they reduced to writing and submitted to the Industrial Commission for approval. The agreement was approved by the Commission on 12 March 1964. The agreement provided that the recovery be divided equally between the injured employee and the insurance carrier, each to pay his proportionate part of the attorneys' fees. Pursuant to this agreement the recovery was divided and distributed in 1964. The net

amount distributed to defendant carrier was substantially greater than the total of the payments which it had then made to the injured employee. We are not presently concerned with the question whether this agreement conformed to the provisions of G.S. 97-10. The fact is that the agreement was made by parties fully competent to make a legally binding contract, was reduced to writing, was signed by the parties, approved by the Industrial Commission, and fully performed. There is no suggestion of fraud, misrepresentation, or duress on the part of anyone. Presumably the officials of defendant insurance carrier thought the agreement was in the best interest of their company at the time it was made. By virtue of the agreement defendant carrier did obtain the use of a substantial sum of money for a number of years. The fact that the injured employee may now have survived for a longer period and become entitled to larger workmen's compensation and medical benefit payments than the defendant carrier may have anticipated at the time the agreement was made, does not entitle it to discontinue or reduce the amount of those payments.

The 1964 agreement did contain the following provision:

"Whereas, the parties have agreed that this Agreement shall be submitted to the N.C. Industrial Commission for its approval as to the recovery from the third party tort-feasor and that either party may at any time in the future apply to the N.C. Industrial Commission for a hearing to determine its respective rights and liabilities under the N.C. Workmen's Compensation Law, all parties further agreeing that this Agreement does not constitute a waiver of any of the rights heretofore possessed by any of the parties hereto."

However, this provision created no new rights in either party; it merely made clear that by the agreement neither party waived any right theretofore possessed. Before the agreement was signed the defendant carrier was obligated to pay workmen's compensation benefits to the injured employee for life, and the employee possessed a right to these payments. He did not waive that right by signing the agreement.

The order of the Industrial Commission is reversed and this case is remanded to the Industrial Commission for entry of an order denying the defendant carrier's motion to be allowed to discontinue payment of workmen's compensation benefits to plaintiff employee and directing defendant carrier to pay the full amount of all such benefits as may have heretofore accrued or as shall hereafter become due during the life of plaintiff employee. Pursuant to G.S. 97-88 the

cost to plaintiff employee of this proceeding, including therein a reasonable attorney's fee to be determined by the Commission, shall be paid by defendant carrier as a part of the bill of cost.

Reversed and remanded.

BRITT, J., concurs.

BROCK, J., concurring in the result:

In my view the agreement as approved by the Industrial Commission on 12 March 1964 constituted a waiver by defendant carrier of further claim to reimbursement.