* * * * * * * * * * *
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration of the evidence, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner but bases its decision upon different grounds.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and this is the proper jurisdiction for this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Plaintiff's date of injury was September 3, 1997.
4. On September 3, 1997, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. On September 3, 1997, an employer/employee relationship existed between the parties.
6. CNA Insurance Company was the compensation carrier on the risk.
7. Plaintiff's average weekly wage is to be determined.
8. The following were stipulated into the evidence of record by the parties at the hearing before the Deputy Commissioner:
 a. Stipulated Exhibit No. 1 — plaintiff's medical records
b. Stipulated Exhibit No. 2 — I.C. Forms
c. Stipulated Exhibit No. 3 — discovery responses
 d. Stipulated Exhibit No. 4 — Defendants' Exhibits 1-20, which include the Opinion and Award of Deputy Commissioner Morgan S. Chapman filed May 12, 1999 and the Opinion and Award of Commissioner Laura Kranifeld Mavretic filed July 6, 2000.
9. The issue before the Commission is whether plaintiff's claim should be denied based upon the doctrine of res judicata, whether plaintiff sustained a change of condition since July 6, 2000, and, if so, to what compensation is plaintiff entitled.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission finds as fact and concludes as a matter of law the following:
 FINDINGS OF FACT
1. The Full Commission held in its July 6, 2000 Opinion and Award that on September 3, 1997, plaintiff sustained an injury by accident arising out of and in the course of her employment while lifting a computer monitor out of a box. Plaintiff sustained a lumbar strain and was capable of performing light duty work as of September 5, 1997.
2. Following her September 1997 injury, defendants provided plaintiff with appropriate light-duty work, which involved removing screws from monitors and writing down serial numbers. From September 3, 1997 until her last date of work with defendants on October 1, 1997, plaintiff continued performing her light-duty work activities. The Commission found that plaintiff was fully capable of performing that work activity, but on October 1, 1997, she voluntarily resigned her employment with defendants.
3. The Commission found that plaintiff's testimony was not credible concerning the reasons she left her employment and her complaints of disabling pain. Instead, the Commission found that plaintiff exaggerated her symptoms well out of proportion to her actual condition.
4. In 1998 plaintiff was evaluated by Dr. George Edwards, an orthopedic surgeon, and the Commission found in its Opinion and Award that Dr. Edwards recommended that plaintiff have a psychological evaluation to determine if she had psychological problems. Dr. Edwards did not attribute any potential psychological problems which plaintiff might have to the lumbar strain that she sustained in September 1997. The Commission concluded in Conclusion of Law 6 that: "Plaintiff is not entitled to have defendants provide a psychological evaluation or for psychological care."
5. Plaintiff did not appeal the decision of the Full Commission to the North Carolina Court of Appeals. Plaintiff did not request authorization from defendants for any medical treatment for her low back condition until she filed a new Form 33 in August 2000, requesting reimbursement for medical treatment which she had already received. Although not previously authorized by defendants, defendants paid for medical treatment received by plaintiff at Wake Medical Center through May 1999. Plaintiff presented no evidence that the treatment she received at Wake Medical Center after May 17, 1999 was due to an emergency.
6. Dr. William L. Craig, III treated plaintiff from January 1999 until December 2000 for back pain. Dr. Craig found plaintiff's MRI and nerve studies during this period to be normal. No objective basis was discernable to explain plaintiff's continuing complaints of pain. Dr. Craig ordered physical therapy and determined that plaintiff was not a surgical candidate. On January 8, 1999 Dr. Craig released plaintiff to light duty work six hours a day.
7. Dr. Craig did not treat plaintiff for psychological problems and when he last saw plaintiff in December 2000 he felt her condition had not substantially changed since her 1997 injury.
8. Dr. William S. Blau began treating plaintiff December 22, 1999 for chronic back pain. Dr. Blau found plaintiff's condition had not significantly changed from December 1999, when he began treating her, until June 28, 2002, when he was deposed. Dr. Blau never took plaintiff out of work and was unable to make a long-term diagnosis other than chronic pain. Dr. Blau did not feel plaintiff was malingering, but he did feel the emotional and functional impact of her pain went beyond what he would expect from an average patient with a similar problem.
9. Dr. Blau continued to treat plaintiff and when he saw her on September 20, 2000, plaintiff discussed issues regarding settlement of her workers' compensation claim and frustration with not knowing the source of her pain. Dr. Blau felt there was nothing further to offer her and felt she should have routine follow up visits on her medications. Dr. Blau referred plaintiff to a work hardening program.
10. On January 23, 2001, Dr. Blau felt plaintiff could perform sedentary work eight hours a day five days a week. Dr. Blau diagnosed plaintiff with somatoform pain disorder and stated that he had no way of knowing whether or not plaintiff would have developed somatoform pain disorder if she had not sustained a back injury in 1997. He also was unable to state which condition came first, plaintiff's back injury or the somatoform pain disorder. Furthermore, it was his opinion that plaintiff's overall condition had not changed substantially since her injury in 1997.
11. On July 25, 2001 Dr. Robert C. Rollins performed a psychological examination of plaintiff at plaintiff's request for a Social Security disability evaluation. Dr. Rollins felt plaintiff's pain was real to her, but provided no opinion on the cause of plaintiff's pain. He diagnosed plaintiff with somatoform pain disorder and depression; however, Dr. Rollins was unable to provide any opinion as to whether or not those conditions were related to the 1997 back strain.
12. Dr. Rollins felt plaintiff was disabled due to her psychological condition at the time she was seen on July 15, 2001. Dr. Rollins felt plaintiff's psychological problems were very long standing going back to her childhood. He stated that somatoform pain disorder is often associated with no particular event. According to Dr. Rollins, plaintiff met three of the criteria for malingering as set forth in the DSM-IV.
13. Plaintiff was evaluated by Dr. Jeffrey Siegel on November 7, 2002 for an independent medical examination. Dr. Siegel did not find plaintiff to be credible and could find no pathological basis for plaintiff's pain. Dr. Siegel felt plaintiff had a trivial injury that did not explain her ongoing complaints of pain. In Dr. Siegel's opinion, the September 1997 injury did not cause a chronic pain syndrome, the medical treatment plaintiff received since July 24, 1998 was not related to the compensable September 1997 injury, and no additional medical treatment was recommended for plaintiff's complaints of back pain.
14. Dr. Jeanne Hernandez, Ph.D., first saw plaintiff on March 22, 2000 at plaintiff's request for evaluation for depression. Dr. Hernandez could not provide copies of her medical records as they were destroyed under new University of North Carolina Hospital procedures. Dr. Hernandez did not review the records of plaintiff's treating physicians.
15. Plaintiff was seen again by Dr. Hernandez on July 25, 2000 and expressed fear of being fired and losing control. Plaintiff did not tell Dr. Hernandez that she voluntarily quit her job with defendants.
16. Dr. Hernandez admitted that plaintiff had undergone an MMPI evaluation in January 2001 at the request of plaintiff and her attorney. The results of this MMPI test were uninterpretable in that plaintiff's responses were so scattered that it was impossible to assess her condition. While Dr. Hernandez provided a copy of the MMPI results to plaintiff, Dr. Hernandez subsequently shredded the remaining report and therefore the report was not available for defendants' review, nor did plaintiff provide a copy of the report to defendants pursuant to their Rule 607 request.
17. Dr. Hernandez diagnosed plaintiff with adjustment disorder, somatoform disorder, chronic pain, acute stress disorder, and post-traumatic stress disorder. Dr. Hernandez causally related plaintiff's psychological conditions to the 1997 compensable injury. However, Dr. Hernandex could not recall her initial impressions of plaintiff's condition and testified that she did not keep diagnostic records, but only wrote down the diagnosis for the purpose of the hospital's billing procedures. She has seen plaintiff approximately two times a year since she initially saw plaintiff in March 2000. She did not review any of plaintiff's prior treatment records, nor did she perform any psychological testing as part of her treatment of plaintiff, but based her opinion solely on the accuracy of plaintiff's report of the history to her and her clinical assessment. In light of the findings of the Commission in its prior Opinion and Award, plaintiff inaccurately reported to Dr. Hernandez the circumstances regarding her cessation of employment with defendants in 1997.
18. The Commission gives little weight to the opinions of Dr. Hernandez which were speculation based on the assumption that since plaintiff did not have a disabling psychological condition prior to September 1997, that this temporal connection was sufficient to establish medical causation.
19. The Full Commission finds by the greater weight of the evidence that plaintiff did not develop somatoform pain disorder or depression as the result of the injury she sustained on September 3, 1997. Plaintiff did not develop chronic disabling back pain as a result of the injury she sustained on September 3, 1997, but, rather, plaintiff developed a lumbar strain, which subsequently resolved, with plaintiff having reached maximum medical improvement on or about July 24, 1998.
20. Plaintiff sustained no permanent partial disability as a result of the September 3, 1997 injury to her back.
21. Plaintiff is not entitled to have defendants pay for any additional medical treatment associated with her lower back condition, as plaintiff's complaints of low back pain are not related to the lumbar strain she sustained on September 3, 1997.
22. In its prior Opinion and Award the Commission found that plaintiff was capable of engaging in light duty work activities as of September 5, 1997. Plaintiff alleged at the first hearing that she was unable to engage in work activities after October 1, 1997 due to chronic disabling pain. This allegation was rejected by the Full Commission in its prior Opinion and Award. At the second hearing, plaintiff continued to allege that she was disabled after October 1, 1997. Plaintiff did not return to work in any employment after October 1, 1997. Therefore, plaintiff has not experienced any change in her wage-earning capacity. Any current disability is due to plaintiff's psychological conditions, which are unrelated to the compensable injury by accident.
23. The Full Commission finds by the greater weight of the medical evidence that plaintiff's psychological conditions are not causally related to the compensable injury by accident.
24. Defendants have not defended this action without reasonable grounds.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has the burden of proving each and every element of compensability. Harvey v. Raleigh Police Dept., 96 N.C. App. 28,384 S.E.2d 549, cert. denied, 326 N.C. 706, 388 S.E.2d 454 (1989).
2. Plaintiff's claim regarding her psychological conditions was not properly dismissed by the Deputy Commissioner on the grounds of resjudicata. Res judicata requires a final judgment on the merits, which was not determined by the Commission in the prior Opinion and Award. ThomasM. McInnis Assoc., Inc. v. Hall, 318 N.C. 421, 349 S.E.2d 552 (1986). A thorough evaluation of plaintiff's claims of depression and somatoform disorder was not heard by the Commission. Lewis v. N.C.Dep't ofCorrection, 138 N.C. App. 526, 531 S.E. 2d 468 (2000). When this matter first came before the Full Commission, the evidence showed that Dr. Edwards recommended a psychological evaluation for problems he believed were unrelated to the compensable injury. However, at that time plaintiff had received no treatment for the psychological conditions and therefore the evidence included no expert medical opinions from a treating psychologist or psychiatrist concerning the causal relationship of these conditions, if any, to the compensable injury by accident. Therefore, the issues regarding plaintiff's alleged psychological conditions had not been previously addressed by the Commission and were not res judicata.
3. Upon consideration of the evidence of record concerning the alleged psychological conditions, the Commission concludes that plaintiff's disability, if any, is due to the psychological conditions and not to the compensable injury. The psychological conditions are not causally related to the September 1997 low back strain. Holly v. ACTS, Inc., 357 N.C. 228,581 S.E.2d 750 (2003); Young v. Hickory Bus. Furn., 353 N.C. 227,538 S.E.2d 912 (2000).
4. A change of condition after a final Award refers to a substantial change of the injured employee's physical capacity to earn wages. Sawyerv. Ferebee Son, Inc., 78 N.C. App. 212, 336 S.E.2d 643 (1985), cert.denied, 315 N.C. 590, 341 S.E.2d 29 (1986); Swaney v. Construction Co.,5 N.C. App. 520, 169 S.E.2d 90 (1969). At the first and second hearings before the Full Commission, plaintiff continued to allege that since October 1, 1997 she has been unable to work in any capacity as a result of her chronic disabling pain. The Commission has not found plaintiff credible regarding her complaints of chronic pain, and the greater weight of the medical evidence failed to show that plaintiff's current complaints of pain are due to the compensable injury by accident. Therefore, plaintiff has not proved any change of condition in that she has sustained no change in her physical capacity to earn wages as a result of the compensable injury by accident. Plaintiff's disability, if any, is due to her unrelated psychological conditions.
5. Plaintiff reached maximum medical improvement of her low back condition on July 24, 1998 and the medical treatment she received thereafter for her low back condition did not tend to effect a cure, give relief, or lessen her disability. N.C. Gen. Stat. § 97-25.
6. Plaintiff's psychological conditions are not related to the September 3, 1997 low back strain. Therefore, plaintiff is not entitled to payment of medical expenses associated with the treatment for those conditions. N.C. Gen. Stat. § 97-25.
7. The defense of this claim was reasonable and not stubborn, unfounded litigiousness and therefore plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim under the law must be and is hereby DENIED.
2. Each party shall bear its own costs.
This the 27th day of August 2004.
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________________ DIANNE C. SELLERS COMMISSIONER