IRVIN FRANK HILL v. HANES CORPORATION AND AETNA LIFE AND CASUALTY INSURANCE COMPANY

No. 8510IC233

(Filed 4 February 1986)

1. **Master and Servant § 94.4— workers' compensation—Rule 60 motion denied—events previously discoverable or occurring after final award**

    The Industrial Commission did not err by denying defendant's motions under N.C.G.S. 1A-1, Rule 60(b)(2) and (6), based on affidavits from private investigators that plaintiff had engaged in activities inconsistent with total disability, where some of the activities were discoverable by due diligence long before plaintiff's claim was heard and the other activities occurred several months after the Commission's final award. The proper procedure to end, diminish, or increase a compensation award previously issued is a motion under N.C.G.S. 97-47.

2. **Master and Servant § 66— workers' compensation—prior award for scheduled injury—subsequent award of temporary total disability for depression—no error**

    The Industrial Commission did not err by awarding plaintiff total disability compensation for depression where it had previously made a scheduled award under N.C.G.S. 97-31(15) (1979) for permanent partial disability. Although an employee is entitled to compensation exclusively under N.C.G.S. 97-31 when all of the employee's injuries are included in the schedule in N.C.G.S. 97-31, plaintiff's mental condition was unscheduled and N.C.G.S. 97-31 does not provide the exclusive remedy.

3. **Master and Servant § 77.1— workers' compensation—prior award—Industrial Commission Form 28B not filed—subsequent additional award—no error**

    The Industrial Commission did not err by making a subsequent award for mental depression in a back injury case without evidence supporting an implied finding of changed conditions because defendant had not filed Industrial Commission Form 28B, a closing receipt, with the Commission. Until that form is filed and approved by the Commission, the Commission may continue to receive evidence and modify or add to a preliminary compensation award.

4. **Master and Servant § 66— workers' compensation—compensation for depression—finding of maximum improvement on a prior date—no error**

    The Industrial Commission did not err by awarding plaintiff temporary total disability for the period beginning 8 November 1982 after finding that plaintiff reached maximum medical improvement on 1 November 1980 where the temporary total disability was the result of depression, it was clear that the Commission separated plaintiff's condition into physical and psychological components, and the Commission specifically found that on 1 November 1980 plaintiff had reached maximum physical improvement.

Hill v. Hanes Corp.

5. **Master and Servant § 66— workers' compensation—total disability—depression—evidence sufficient**

The evidence was sufficient to support the Industrial Commission's finding that plaintiff is totally disabled due to depression where a psychiatrist testified that persistent weakness and pain in plaintiff's legs and back had brought about symptoms of depression including difficulty in sleep patterns, trouble in concentration, accentuation of the pain already being experienced, psychomotor slowing, and constriction of interest in general in plaintiff's usual way of going about life, which had been seriously altered in so much as he was unable to function in an employment situation.

6. **Master and Servant § 69— workers' compensation—compensation for depression—no credit for prior award for scheduled injury**

In a workers' compensation case in which the Industrial Commission awarded plaintiff temporary total disability for depression after previously awarding compensation for permanent partial disability of both legs under N.C.G.S. 97-31, defendants were not entitled to a credit for compensation awarded under N.C.G.S. 97-31 where the award for temporary total disability began approximately six months after the final payment on the scheduled award, no overlapping benefits were ever awarded or paid, and the disability for which defendants had previously compensated plaintiff was separate and distinct from the disability based on stress induced depression.

Judge PARKER concurs in the result.

Chief Judge HEDRICK dissenting.

APPEAL by defendants from the opinion and award of the North Carolina Industrial Commission entered 23 October 1984. Heard in the Court of Appeals 14 October 1985.

*William Z. Wood, Jr., for plaintiff appellee.*

*Womble, Carlyle, Sandridge & Rice, by Keith W. Vaughan, for defendant appellants.*

BECTON, Judge.

I

This case presents an appeal from an opinion and award of the North Carolina Industrial Commission (Commission). On 12 March 1979, plaintiff Irvin Frank Hill was injured in the course of his employment with defendant Hanes Corporation. In a written agreement reached among the parties on 18 April 1979, and in a supplemental agreement dated 18 December 1979, the defendants agreed to compensate Hill for temporary total disability for "necessary weeks." Both agreements were filed with the Commis-

sion. Thereafter, apparently because the parties were unable to agree on the extent of Hill's disability, the case was heard before a Deputy Commissioner. The Deputy Commissioner found and concluded that Hill was entitled to compensation: for temporary total disability under N.C. Gen. Stat. Sec. 97-29 (Cum. Supp. 1983) (recompiled 1985) from 27 March 1979 to 11 April 1979, and from 10 July 1979 to 1 November 1980; for twenty percent permanent partial disability of each leg under N.C. Gen. Stat. Sec. 97-31 (15) (Cum. Supp. 1983) (recompiled 1985) for a period of eighty weeks commencing 1 November 1980; and for temporary total disability caused by stress-induced depression resulting from his injury from 8 November 1982 for so long as he remains disabled, pursuant to G.S. Sec. 97-29. The Commission affirmed.

Defendants Hanes Corporation and Aetna Life and Casualty Insurance Company appeal, contending that: (1) their motion for a rehearing should be granted; (2) the Commission erred in awarding Hill temporary total disability for the period commencing 8 November 1982; and (3) the Commission failed to allow defendants credit for the compensation paid under G.S. Sec. 97-31(15) in connection with the award of temporary total disability for the period commencing 8 November 1982. For the reasons stated below, the motion for rehearing is denied, without prejudice to the defendants' right to petition the Commission for a hearing based on a "change in condition" under N.C. Gen. Stat. Sec. 97-47 (1979), and the opinion and award entered by the Commission is affirmed.

## II

Plaintiff Hill was employed as a machine fixer by defendant employer Hanes Corporation. His job involved using small hand tools to perform simple repairs on machines. In 1979, Hill was fifty years old and had worked for Hanes for twenty-four years. On 12 March 1979, Hill slipped, fell, and struck his back on the corner of a machine. He apparently continued working until 29 March 1979, when he came under the care of Dr. Gunn, a specialist in preventive and occupational medicine and the medical director for Hanes. Hill returned to work on 11 April 1979, continued working until 9 July 1979, and has not returned to work since. Hill again came under Dr. Gunn's care in August 1979 with complaints of back pain, numbness, and burning and weakness in both legs. Dr.

Gunn continued to see Hill through 1981. He worked with Hill to find a job Hill was capable of performing, but these efforts were unsuccessful.

Hill was referred to Dr. Jackson, a neurologist, who examined him on 9 October 1979. At that time, Hill was still experiencing weakness and decreased sensation in both legs as well as decreased sensation across the middle of his back. He was unable to do a deep knee bend, had no reflexes in his legs, and had abnormal reflexes in his feet. A myelogram taken two days later revealed "almost complete obstruction" at the mid-back level. Dr. Jackson testified that Hill reached maximum medical improvement in November 1980 and that as of 20 August 1981, the last time he saw Hill, Hill was unable to work at anything that required him to be on his feet or to sit for any period of time. Dr. Jackson referred Hill to Dr. de la Torre, a neurosurgeon, who operated on Hill in his spinal cord area. The operation revealed arachnoiditis, a thickening of the membranes that surround the spinal cord. Both Dr. de la Torre and Dr. Jackson testified that the arachnoiditis was probably caused by Hill's 12 March 1979 injury. Dr. de la Torre testified that, despite the surgery, Hill showed minimal improvement in the months following surgery and that between August 1980 and March 1981, Hill's physical condition had stabilized. Dr. de la Torre rated Hill at twenty percent disabilty in the usage of his legs.

Dr. de la Torre recommended a psychological evaluation of Hill, and on 8 November 1982, Hill came under the care of Dr. Branham, a psychiatrist, for the treatment of depression. Dr. Branham testified that, in his opinion, Hill's physical problems—the weakness and pain caused by his injury—resulted in depression. According to Dr. Branham, Hill's depression manifested itself in insomnia, difficulty in concentration, accentuation of pain, psychomotor slowing and constriction of interest (loss of interest in activities formerly found enjoyable).

III

[1] On 14 October 1985, defendants filed with this Court a motion pursuant to Rule 60(b)(2) and (6) of the North Carolina Rules

of Civil Procedure.[1] Three affidavits were filed in conjunction with this motion, one from one of defendants' attorneys, and two from private investigators hired to observe Hill. The investigators stated in their affidavits that between 8 March 1985 and 6 May 1985, they observed Hill engaging in activities such as carrying grocery bags, mowing the lawn with a tractor, working on his automobile, and cutting lumber with a "skill" saw. The investigators also suggested that Hill had been involved in other "physical activity" since 1977. The attorney's affidavit contained what she had been told by the investigators, essentially a repetition of their affidavits.

In order to support a motion under Rule 60(b)(2), new evidence must be presented that was not discoverable by due diligence in time to move for a new trial. No such evidence is offered in defendants' motion. First, the affidavits indicate that since 1977 Hill has engaged in "physical activities which are not consistent with the award of total disability." By defendants' own admissions, then, this evidence was discoverable by due diligence long before Hill's claim was ever heard. Second, the other activities, those allegedly observed between 8 March and 6 May 1985, occurred several months after the Commission's final award. The proper procedure to end, diminish or increase a compensation award previously issued is a motion to the Industrial Commission under N.C. Gen. Stat. Sec. 97-47 (1985). *See Owens v. Standard Mineral Co.*, 10 N.C. App. 84, 87, 177 S.E. 2d 775, 777 (1970) (The Industrial Commission has the discretion to consider newly discovered evidence in a hearing under G.S. Sec. 97-47), *cert. denied,* 277 N.C. 726, 178 S.E. 2d 831 (1971); *cf. Swift v. Smith & Co.,* 212 N.C. 608, 194 S.E. 2d 106 (1937) (On defendant employer's motion, Commission diminished award based on proven increase in claimant's earning power after initial award, and Supreme Court affirmed.). The Rule 60(b)(2) motion might have been successful had defendants offered newly discovered evidence of activities occurring before the Commission's award that were not previously discoverable by due diligence. There are no findings of fact necessary to determine the sufficiency of the Rule 60(b)(2) motion.

---

1. Although defendants styled their motion as "A Motion for Rehearing," it is in fact a Motion for Relief from Judgment or Order. The label, of course, has no bearing on the substance of the motion in this case.

With regard to defendants' motion under Rule 60(b)(6), we find nothing in the motion justifying relief from the Commission's award. With respect to the evidence of events allegedly occurring since 1977, this evidence should have been presented at the original hearing, and we decline to circumvent the "due diligence" requirement of Rule 60(b)(2) by indiscriminately entertaining any and all "newly discovered evidence" under Rule 60(b)(6). Were we to hold otherwise, Rule 60(b)(6) would become a vehicle for unsuccessful litigants to obtain automatic rehearings before the Commission without satisfying the requirements of G.S. Sec. 97-47. We decline to supplant the legislature's judgment on this issue. With respect to the evidence of activities allegedly observed after the Commission's award, we reiterate that the legislature determined that G.S. Sec. 97-47 would provide relief in these situations. The evidence is relevant only insofar as it indicates a change in claimant's wage-earning capacity; G.S. Sec. 97-47 is designed for this case. *Swygert v. Swygert,* 46 N.C. App. 173, 264 S.E. 2d 902 (1980) is inapposite to this case. It involved allegations, supported by affidavits, of mistake, inadvertence, surprise, excusable neglect and fraud, and there were "controverted questions of fact" for the trial court to resolve on remand. *Id.* at 181, 264 S.E. 2d at 907. The alleged events in the case at bar were either discoverable or are appropriate for G.S. Sec. 97-47 review. Therefore, there is no need for a hearing or findings of fact under defendants' Rule 60(b)(6) motion, and we see no reason to disturb the judgment of the Commission.

IV

The defendants' primary argument is that it was error for the Commission to award benefits for temporary total disability for the period beginning 8 November 1982. The following conclusion of law is at the heart of defendants' challenge:

As a result of the injury by accident giving rise hereto, plaintiff has experienced stress induced depression which rendered him totally disabled from 11-8-82 up through and including 9-16-83 and he is entitled to compensation therefor at the rate of $156.79 per week for said period and thereafter for so long as he remains so disabled. G.S. 97-29.

In challenging this portion of the award, defendants make a number of related arguments, none of which, in our opinion, has merit. We address these challenges separately.

A

[2]　Defendants contend that because the Commission made a scheduled award under N.C. Gen. Stat. Sec. 97-31(15) (1979) for permanent partial disability, it was precluded as a matter of law from subsequently awarding total disability compensation. It is true that when *all* of an employee's injuries are included in the schedule set out in G.S. 97-31, the employee's entitlement to compensation is exclusively under that section. *Perry v. Hibriten Furniture Co.*, 296 N.C. 88, 93-94, 249 S.E. 2d 397, 400-01 (1978). However, it has also been held that "if an employee receives an injury which is compensable and the injury causes her to become so emotionally disturbed that she is unable to work, she is entitled to compensation for total incapacity under G.S. 97-29." *Fayne v. Fieldcrest Mills, Inc.*, 54 N.C. App. 144, 146, 282 S.E. 2d 539, 540 (1981), *disc. rev. denied*, 304 N.C. 725, 288 S.E. 2d 380 (1982). Hill's position is that, because his mental condition is an unscheduled, compensable injury, not "all" of his injuries are included within the schedule, and thus G.S. Sec. 97-31 does not provide the exclusive remedy in his case.

Hill's position has been adopted, and defendants' argument rejected, in a case of striking factual similarity. In *Davis v. Edgecomb Metals Co.*, 63 N.C. App. 48, 303 S.E. 2d 612 (1983), claimant received compensation for a leg injury sustained by accident in the course of his employment. The Commission found that claimant suffered from a "post-traumatic neurosis with a depressive reaction" as a result of the accident. It further found that claimant suffered a relapse in his recovery from the depression when he was told one leg would be permanently shorter than the other. Based on these findings, the Commission concluded that claimant was entitled to additional compensation for temporary total disability until he reached maximum improvement from his psychiatric condition. The employer argued on appeal that claimant's leg injury was a scheduled injury exclusively compensable under G.S. Sec. 97-31(15) and that it was error to award additional compensation for a disabling psychiatric condition resulting from claimant's inability to accept the permanency of his injury. This Court disagreed, noting that the law of this jurisdiction and others allows recovery for psychic, mental and emotional injuries which result from a compensable injury at the workplace, and affirmed the Commission. *Accord Roper v. J. P. Stevens & Co.*, 65

N.C. App. 69, 308 S.E. 2d 485 (1983), *disc. rev. denied,* 310 N.C. 309, 312 S.E. 2d 652 (1984) (When scheduled injury results in unscheduled complications, compensation under G.S. Sec. 97-31 and G.S. Sec. 97-29 *or -30 is proper.*).

B

[3]   Defendants also argue that the Commission was without authority to make the award in question because no evidence in the record supports an implied finding of a "change of condition." Under N.C. Gen. Stat. Sec. 97-47 (1979) (recompiled 1985), the Commission may modify compensation previously awarded only when there has been a "change in condition" of the claimant. *Baldwin v. Amazon Cotton Mills,* 253 N.C. 740, 117 S.E. 2d 718 (1961). However, the statute is inapplicable in cases in which there has been no previous final award. *Watkins v. Central Motor Lines, Inc.,* 279 N.C. 132, 137, 181 S.E. 2d 588, 592 (1971). In such cases, jurisdiction remains in the Commission pending termination of the case by a final award. *Id.* We conclude that a final award had not been entered in this case prior to the hearing before the Deputy Commissioner.

Prior to the hearing before the Deputy Commissioner, the parties had filed with the Commission I.C. Forms 21 and 26, agreements for the payment of disability compensation to continue for "necessary" weeks. Both forms contained a notation at the bottom that "failure to file a report of compensation paid (I.C. Form 28B) within 16 days after last payment pursuant to this agreement" would subject defendants to a fine, pursuant to N.C. Gen. Stat. Sec. 97-15(f) (1985). There is no evidence that a copy of I.C. Form 28B was filed with the Commission. In *Pratt v. Central Upholstery Co., Inc.,* 252 N.C. 716, 115 S.E. 2d 27 (1960), as in the case at bar, the parties had initially filed a compensation agreement with the Commission, and they later sought a hearing. Although the claimant accepted and endorsed a check from the defendant that contained the notation "Final payment of temporary total disability," that did not constitute "final payment of the additional compensation to which she was entitled." 252 N.C. at 721, 115 S.E. 2d at 33. The Supreme Court continued:

> It is significant that claimant was not requested to sign a closing receipt, I.C. Form 27 [now Form 28B]. A closing receipt purports to be a final settlement and indicates that

no further compensation will be paid unless request for hearing for change of condition is made within a year from date of the receipt. It states: "The use of this form is required under the provision of the Wormen's Compensation Act." . . . Rule XI(3) promulgated by the Commission pursuant to G.S. 97-80 provides that "no agreement for permanent disability nor any closing receipt will be approved until all medical reports in the case have been filed with the Commission." Claimant did not sign a closing receipt. Had she signed such receipt with the approval of the Commission it would have acquitted the employer.

*Id.* at 721-22, 115 S.E. 2d at 33 (citations omitted). A closing receipt, also called I.C. Form 28B, must still be filed with the Commission. N.C. Gen. Stat. Sec. 97-18(f) (1979) (recompiled 1985); Industrial Commission Rule X(5); *see Watkins; see also Willis v. J. M. Davis Industries, Inc.*, 280 N.C. 709, 186 S.E. 2d 913 (1972). Until it is filed with and approved by the Commission, the Commission may continue to receive evidence and modify or add to a preliminary compensation award. The parties in the case sub judice clearly were aware of the need to file I.C. Form 28B to notify the Commission.

We recognize that, for purposes of G.S. Sec. 97-47, the statutory one-year period for filing a claim for a change of condition begins at the time final payment is accepted, not when Form 28B is filed. *See Willis.* Nonetheless, the Commission must be given the opportunity to determine whether a payment labeled "final" is or should be, in fact, the final payment. After this determination is made, the Commission accepts and approves a copy of Form 28B.

## C

[4] Defendants next attack the award of temporary total disability for the period commencing 8 November 1982 on the ground that it is inconsistent with the Commission's finding that Hill reached maximum medical improvement on 1 November 1980. The Commission found:

5. As of 11-1-80, plaintiff's *physical condition* stabilized and by said date, he reached *maximum medical improvement physically.* His *physical condition* has remained essentially

unchanged since that date. As a result of the injury by accident, . . . he sustained 20% permanent partial disability of each leg. . . .

* * *

8. . . . As a result of the injury by accident . . . and the attendant residuals in his lower extremities and his inability to work, he experienced stress which at least by 11-8-82 resulted in depression and rendered him totally disabled.

(Emphasis added.) It is clear from these findings that the Commission separated Hill's medical condition into two components, physical and psychological. The Commission specifically found that on 1 November 1980, Hill had reached his maximum *physical* improvement. Thus, it was consistent for the Commission to go on to find that although Hill's physical condition did not change, he was subsequently disabled as a result of stress-induced depression.

### D

[5] The defendants also allege the evidence does not support the Commission's finding that Hill is totally disabled due to stress-induced depression. The Commission found:

8. On 11-8-82, he came under the care of Dr. Branham, a psychiatrist, and has since then remained under his treatment, including antidepressant medications, for depression. As a result of the injury by accident giving rise hereto and the attendant residuals in his lower extremities and his inability to work, he experienced stress which at least by 11-8-82 resulted in depression and rendered him totally disabled. Although he has improved on treatment, he continues to experience sleep disturbance, difficulty in concentration, accentuation of pain, psychomotor slowing, sexual dysfunction, and constriction of interest by reason of said stress induced depression and he remained totally disabled thereby through 9-16-83 when last examined by Dr. Branham. The credible evidence of record fails to establish that said depression was of disabling severity prior to 11-8-82.

Dr. Branham, the psychiatrist, testified:

I saw Mr. Hill because of weakness in his legs, pain in his back, which had been present since an injury at work. Subse-

quent to the injury, the weakness and the pain persisted which resulted in bringing about some symptoms of a disease which we call depression. These symptoms as I saw in Mr. Hill were represented by dysphoria or depression, difficulty in sleep pattern, trouble in concentration, accentuation of the pain already being experienced, psychomotor slowing, constriction of interest in general in his usual way of going about conducting his life which had been seriously altered in so much as *he was unable to function in an employment situation.*

(Emphasis added.) He further indicated that one cause of Hill's depression was the fear of future deterioration of his legs. According to Dr. Branham, Hill's depression was a result of a biochemical dysfunction of the nerve brain cells. He testified that stress caused by pain and weakness in Hill's legs triggered this dysfunction. The emphasized portion of the last sentence of the quoted testimony addresses the issue involving plaintiff's incapacity to earn wages due to depression.

Findings of fact of the Industrial Commission are binding on a reviewing court if supported by competent evidence and may be set aside on appeal only if there is no competent evidence to support them. *Carrington v. Housing Authority,* 54 N.C. App. 158, 282 S.E. 2d 541 (1981). In our opinion, the quoted evidence is sufficient to support Finding of Fact number 8, upon which the Commission's award of compensation for temporary total disability after 8 November 1982 is based.

V

[6] Finally, defendants argue that the Commission erred in awarding temporary total disability for the period commencing 8 November 1982 without affording them a credit for compensation paid in connection with the Commission's award of twenty percent permanent partial disability of both legs under G.S. Sec. 97-31. The pertinent part of the Commission's award is as follows:

1. Subject to counsel fee hereinafter allowed and *subject to any credit to which defendants are entitled by reason of compensation benefits already paid to him,* defendants shall pay compensation to plaintiff at the rate of $156.79 per week for the following periods: from 3-27-79 to 4-11-79; from 7-10-79

to 11-1-80; from 11-1-80 for a period of 80 weeks [under G.S. Sec. 97-31]; and from 11-8-82 up through 9-16-83 and thereafter for so long as he remains totally disabled [under G.S. Sec. 97-29].

(Emphasis added.) The question, then, is not whether the Commission afforded defendants a credit, as it did, but whether this credit should operate so amounts paid under G.S. Sec. 97-31 must be deducted from benefits awarded under G.S. Sec. 97-29 commencing 8 November 1982. We answer this question in the negative.

Apparently, the question of availability of credit in these circumstances never has been squarely addressed by our courts. However, in *Davis v. Edgecomb Metals*, discussed in Part IV(A) as similar to the case at bar, this Court held it was not error to award "additional compensation for a disabling psychiatric condition" subsequent to a scheduled award of benefits under G.S. Sec. 97-31(15) for claimant's leg injury. 63 N.C. App. at 54, 303 S.E. 2d at 616. This implicitly supports Hill's contention that payments under a scheduled award of benefits should be treated as separate from any subsequent award for temporary total disability.

In *Moretz v. Richards & Associates*, 74 N.C. App. 72, 327 S.E. 2d 290, *disc. rev. allowed*, 314 N.C. 116, 332 S.E. 2d 482 (1985), this Court applied N.C. Gen. Stat. Sec. 97-42 (1979) (recompiled 1985) which provides, "[a]ny payments made by the employer to the injured employee during the period of his disability . . . which by the terms of this Article were not due and payable when made, may, subject to the approval of the Industrial Commission be deducted from the amount to be paid as compensation." In *Moretz*, defendant carrier paid temporary total disability benefits from 7 November 1975 through 25 October 1982 and, in June 1982, requested a hearing to determine whether the employee was entitled to continue receiving payments. The Commission found that the employee had a ninety percent permanent partial disability of the left leg and awarded 180 weeks of benefits under G.S. Sec. 97-31 to begin on 1 December 1977, the date of maximum medical recovery. This Court held that it was an abuse of discretion under G.S. Sec. 97-42 for the Commission to refuse to grant defendants a credit on the permanent partial disability award for payments made after 1 December 1977. The holding

was premised in part on the "strong public policy against double recovery." 74 N.C. App. at 76, 324 S.E. 2d at 294.

In contrast to *Moretz*, the instant case involves no double recovery; no overlapping benefits under G.S. Sec. 97-31 and G.S. Sec. 97-29 were ever awarded or paid. Rather, the temporary total disability payments were to begin approximately six months after the final payment on the scheduled award. The disability for which defendant Hanes previously compensated Hill, and for which Hanes seeks a credit, is separate and distinct from the disability based on stress-induced depression. We therefore hold that in the compensation awarded for temporary total disability commencing 8 November 1982, the defendants are not to be given credit for compensation previously awarded under G.S. Sec. 97-31(15).

The motion for rehearing is denied.

The opinion and award appealed from is affirmed.

Chief Judge HEDRICK dissents.

Judge PARKER concurs in the result.

Chief Judge HEDRICK dissenting.

In my opinion, the evidence in the record does not support the critical finding of fact that:

8. On 11-8-82, he came under the care of Dr. Branham, a psychiatrist, and has since then remained under his treatment, including anti-depressant medications, for depression. As a result of the injury by accident giving rise hereto and the attendant residuals in his lower extremities and his inability to work, he experienced stress which at least by 11-8-82 resulted in depression and rendered him totally disabled. Although he has improved on treatment, he continues to experience sleep disturbance, difficulty in concentration, accentuation of pain, psychomotor slowing, sexual dysfunction, and constriction of interest by reason of said stress induced depression and he remained totally disabled thereby through 9-16-83 when last examined by Dr. Bran-

ham. The credible evidence of record fails to establish that said depression was of disabling severity prior to 11-8-82.

The majority states that this finding of fact is supported by the following testimony of Dr. Branham:

I saw Mr. Hill because of weakness in his legs, pain in his back, which had been present since an injury at work. Subsequent to the injury, the weakness and the pain persisted which resulted in bringing about some symptoms of a disease which we call depression. These symptoms as I saw in Mr. Hill were represented by dysphoria or depression, difficulty in sleep pattern, trouble in concentration, accentuation of the pain already being experienced, psychomotor slowing, constriction of interest in general in his usual way of going about conducting his life which had been seriously altered in so much as he was unable to function in an employment situation.

This testimony indicates that plaintiff was depressed because he was "unable to function in an employment situation." It is not evidence of disability due to depression. I, therefore, vote to reverse.

Furthermore, in my opinion, the majority has mishandled the Rule 60(b)(2) and (6) motion for "relief from judgment." This motion was properly filed in this Court. *Swygert v. Swygert*, 46 N.C. App. 173, 264 S.E. 2d 902 (1980). With respect to hearing the Rule 60(b) motion in *Swygert*, Judge Frank Parker stated that "the determination of plaintiff's motion will require the resolution of controverted questions of fact which the trial court is in a far better position to pass upon than is this Court. . . ." *Id.* at 181, 264 S.E. 2d at 907 (1980). I know no reason why we should treat a Rule 60(b) motion filed in this Court in an appeal from the Industrial Commission differently than we treat any other Rule 60(b) motion.

The request in defendant's Rule 60(b) motion that we "decide the merits of the appeal filed by the defendants prior to remanding this case to the Industrial Commission for consideration of this motion" effectively withdrew the motion. Thus we need not take action on the motion.

Furthermore, a motion made under G.S. 97-47 is certainly not the same as a motion under Rule 60. A motion by defendant before the Industrial Commission pursuant to G.S. 97-47 would not afford the same relief as a motion filed pursuant to Rule 60(b)(2) and (6). When this case is finally determined on appeal, the defendant can file its Rule 60(b) motions with the Industrial Commission.