The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Based on the agreement between the parties on Form 21 dated April 3, 1992 and approved by the Commission April 29, 1992, the undersigned find as fact and concludes as matters of law the following as
STIPULATIONS
1. All parties hereto are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On March 18, 1992, plaintiff sustained an injury by accident arising out of and in the course of his employment.
3. The accident resulted in a fractured right foot and fractured vertebra.
4. The average weekly wage of plaintiff was $240.00 (estimated) subject to change upon verification, yielding a compensation rate of $160.01.
An issue raised by the Form 33 and Form 33R in this case is the correctness of the average weekly wage. Plaintiff contends that he earned $9.00 per hour, which was confirmed by the testimony at the hearing. Thus he contends his average weekly wage should be set at $360.00 for a 40 hour work week. It is commonly known, sufficient to be subject to judicial notice, that in the construction industry, where plaintiff has been employed as a roofer and a carpenter, an employee is not generally engaged in 40 hour work weeks, both for reasons having to do with the weather (in North Carolina and in other parts of the country) and the cyclical economic patterns in the industry. On the other hand, the winter months during which plaintiff was employed by defendant may not be typical of employment patterns in the industry. The employer was not able to produce a Form 22 for a similar employee whose work pattern may have covered employment at other times than the January-March season. The employer did present Form 22 (Stip. Exh. 1), showing the days plaintiff actually worked in January, February, March of 1992 (generally recognized in Piedmont North Carolina as a mild winter). Based on the standard method of calculation, the average weekly wage is computed to be $242.29, ade minimis difference from the estimated figure of $240.00. The undersigned, in the absence of any other evidence supporting a different figure (a prospective but nevertheless vague $1.00 hourly raise was mentioned in the testimony), suggests that the $240.00 the parties originally agreed to is a fair, just and reasonable approximation of what plaintiff would have been earning but for his injury. He finds and determines $240.00 to be plaintiff's average weekly wage.
On September 2, 1992, Consolidated Administrators filed with the Commission on Form 24, an application to stop payment of compensation indicating that through August 25, 1992 plaintiff had been paid for 23 weeks of compensation for temporary total disability, totalling $3,543.09.
On Form 33R defendants are claiming an overpayment of temporary total disability compensation, based on a forecast of the evidence that plaintiff was capable of earning wages after mid May, 1992.
On March 17, 1993 the parties deposed Dr. Paul Pressley Gilbert, an orthopedic surgeon. The transcript of the deposition has been received for the record. Attached to the transcript are medical records of Dr. Gilbert. No objections were made at the deposition.
***********************
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff's employer was Barry Horne Roofing Co., hereinafter identified as "Horne" or "defendant employer", which had a roofing subcontract from Providence Designer Homes.
2. Plaintiff was employed by the defendant employer, beginning January 29, 1992 as a "roofer" doing general roofing work on homes and buildings. On March 18, 1992, at approximately 11:45 a.m., the plaintiff fell two stories off a roof of a home being constructed by Providence during the course and scope of his employment with Horne. Plaintiff fell while cutting around a pipe collar. The home under construction was located in Mint Hill, Mecklenburg County, North Carolina.
3. Plaintiff sustained a fractured bone in his right heel with resulting loss of height of the heel and stiffness, and loss of motion of the subtalar joint which is the bone located between the ankle bone and the heel bone. Plaintiff also sustained splintered fractures of two vertebrae in his low back at L1 and L2. He also had mild restriction of motion in his ankle joint. He also had loss of sensation to the left thigh. Immediately following his injuries, plaintiff was hospitalized for four days; and thereafter was treated by Dr. Paul P. Gilbert, an orthopedic surgeon, through October 5, 1992. Dr. Gilbert rated plaintiff for permanent partial disability on October 19, 1992, giving plaintiff impairment ratings of 50 percent of the right foot, 20 percent of the back and 5 percent of the left leg. These ratings are challenged by defendants.
3. Despite his physical condition, plaintiff began working about May 10, 1992. He needed the money because he could not pay his and his wife's bills and the compensation payments from defendants were irregular and often late.
4. Plaintiff was not incapable of earning wages from and after May 10. He agreed to frame a house for Eugene Brantley. Brantley paid him by weekly checks until the end of May for work averaging in excess of 30 hours per week. Thereafter until mid July, plaintiff, with two or three other roofers, began roofing Brantley's house. Brantley paid him his first check for roofing in the amount of $300.00 June 13 and an overall total of $800.00, which was shared with plaintiff's helpers. The work was slow and plaintiff and his "team" worked a few hours a day. Plaintiff was observed on top of Brantley's roof during this period when he was receiving compensation checks for his disability. This was in violation of Dr. Gilbert's orders. Finally, plaintiff in effect walked off the job, and paid no attention to Brantley's efforts to get him to return and finish the work. Thereafter plaintiff spent one week and a half working for Barry Horne's cousin at Mercer Roofing Co., and two weeks framing a house for Nancy Brantley, a relative of Eugene Brantley. After his compensation stopped at the end of August, plaintiff spent a week or less sanding on a project in Waxhaw. Finally, in December he was hired by Sears Roofing Company, which has gone out of business.
5. Plaintiff was overpaid compensation for temporary total disability from May 10, 1992 through August 28, 1992, a period of 15 and 5/7 weeks, for a total overpayment of $2,514.45.
6. The entire group of impairment ratings of Dr. Gilbert cannot be accepted as a basis for findings of fact because Dr. Gilbert was unaware that plaintiff had returned to work during the months from May to August; was misled by plaintiff as to his violation of Dr. Gilbert's instructions and limitations; and because one must infer that the proscribed activity had the effect of increasing the degree of disability observed in October when Dr. Gilbert made his rating. Moreover, with respect to the 50 percent impairment of the foot, Dr. Gilbert could not explain how he arrived at this figure.
7. Under the North Carolina Guidelines, plaintiff has sustained a 25 percent permanent partial impairment of his foot and a 20 percent impairment of his back (two fractured vertebra), as a result of his compensable injury. There is no impairment for loss of sensation in the thigh, which Dr. Gilbert admitted was arbitrary.
***********************
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. As a result of his compensable injury, plaintiff is entitled to 60 weeks of compensation for his 20 percent permanent partial disability of the back, payable at a rate of 66 2/3 percent of his average weekly wage. G.S. 97-31(23).
2. As a result of his compensable injury, plaintiff is entitled to compensation for 36 weeks for the 25 percent permanent partial disability of his foot payable at a rate of 66 2/3 percent of his average weekly wage. G.S. 97-31(14).
3. The undersigned have reviewed the record in detail as to the Deputy Commissioner's assignments of ratings and are of the opinion that the Deputy Commissioner was correct and within the law in his determinations in light of the competent and convincing evidence of record.
4. The Industrial Commission has no authority to order restitution by plaintiff of the overpayment to him of temporary total disability compensation. G.S. 97-42 may not be utilized so as to credit the overpayment against compensation due under G.S.97-31(23) and G.S. 97-31(14). As indicated in the case law, the purpose of the credit allowed under G.S. 97-42 is to encourage employers to adopt wage replacement plans while employee's claims to compensation are being disputed. Evans v. ATT Technologies,103 N.C. App. 45 (1991); Foster v. Western Electric Co., 320 N.C. 113
(1987); cf. Hill v. Hanes Corp., 79 N.C. App. 67, 78 (1986), aff'd in part, rev'd in part, 319 N.C. 167, 353 S.E.2d 392 (1987). Payments under G.S. 97-31 are not designed to replace wages lost because losses in the schedule in G.S. 97-31 are conclusively presumed to diminish wage earning abilities. Harrell v. Harrietand Henderson Yarns, 314 N.C. 566(1985); Strickland v. BurlingtonIndus., Inc., 86 N.C. App. 598, modified and aff'd on rehearing,87 N.C. App. 507(1987). Such payments are made without regard to loss of wage earning power. Loflin v. Loflin, 13 N.C. App. 574, cert. denied, 281 N.C. 154 (1972).
5. The Deputy Commissioner was correct in his determination regarding restitution. While equity would certainly dictate that plaintiff should not receive a double recovery in the form of temporary total disability drawn while employed, the Industrial Commission is indeed given no authority even in its discretion, by G.S. 97-42 (in both the pre-September 1, 1994, form and the current form) to allow a credit for the overpayment of temporary total disability compensation to be assessed against the permanent partial disability award.
Defendants have argued that the "due and payable" clause of G.S. 97-42 and their cited case of Moretz v. Richard andAssociates, 74 N.C. App. 72, 327 S.E.2d 290 (1985), modified on other grounds, 316 N.C. 539, 342 S.E.2d 844 (1986), which spoke of temporary total disability being "due and payable" support their position that the Industrial Commission has the discretion to award an offset in such cases.
While sympathetic to defendants' position, the undersigned do not find this legal argument convincing in light of the clear intent of G.S. 97-42 to provide credits for non-workers' compensation related wage replacement plans.
It is further noted that Dr. Gilbert did not rate plaintiff for permanent partial disability until October 19, 1992. Therefore, plaintiff was not entitled to be paid permanent partial disability payments under G.S. 97-31 until after that date, more than one and one half months after temporary total benefits had been authorized to cease on August 28, 1992. Therefore, there was no "double dipping" in this regard.
6. Plaintiff is entitled to the benefits of G.S. 97-25.
***********************
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Subject to the attorney's fee awarded below, defendants shall pay to plaintiff in a lump sum, $15,360.96, representing 96 weeks of compensation payable under G.S. 97-31 at a rate of $160.01 per week.
2. In equity, plaintiff should permit defendants to reduce the above lump sum by their overpayment of temporary total disability compensation in the amount of $2,514.45.
3. Defendants shall pay the medical expenses resulting from plaintiff's injury when bills for same have been presented through the carrier to the Industrial Commission for approval and approved by the Commission.
4. A reasonable fee of $3,840.24 is approved for plaintiff's counsel which shall be deducted from the lump sum awarded above and paid directly to Mr. Biedler.
5. Defendants shall pay the costs, including an expert witness fee of $200.00 to Dr. Pressley Gilbert.
IT IS FURTHERMORE ORDERED that this case be REMOVED from the Full Commission docket.
This the __________ day of ________________________, 1994.
 S/ ________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ________________________ JAMES J. BOOKER COMMISSIONER
S/ ________________________ W. JOEY BARNES DEPUTY COMMISSIONER
JHB/nwm 11/22/94