LUCILLE PRATT, EMPLOYEE v. CENTRAL UPHOLSTERY CO., INC., EMPLOYER, AND TEXTILE INSURANCE CO., INSURANCE CARRIER.

(Filed 10 June, 1960.)

**1. Master and Servant § 93—**

Where there are no exceptions by any of the parties to the findings of fact by the hearing commissioner, the findings are final and conclusive. G.S. 97-86.

**2. Master and Servant § 94—**

Claimant's exception to the judgment of the Superior Court upon appeal from an award of the Industrial Commission presents the sole question whether the findings of fact support the judgment.

**3. Master and Servant § 91—**

Approval by the Industrial Commission of an agreement of the parties for payment of compensation is a judicial act, and the approved agreement becomes an award of the Industrial Commission. G.S. 97-87.

**4. Same: Master and Servant §§ 82, 88—**

The approval by the Industrial Commission of an agreement of the parties for compensation for a stipulated amount to begin on a specified date and "continuing for legal weeks", which agreement is executed before the employee returns to work and has blank spaces for showing the date of return to work and the wages earned upon such return, and without the submission to the Commission of a medical report, *is held* not a final award, but an interlocutory award, and the Industrial Commission retains jurisdiction to enter a final award upon the filing of a full and complete medical report. G.S. 97-82.

**5. Master and Servant § 67: Evidence § 4—**

The presumption that disability ends when an employee returns to work is a presumption of fact and not of law and is rebuttable, and such presumption is without weight in the face of facts establishing that an employee had partial incapacity during the healing period after her return to work and partial permanent disability thereafter.

**6. Master and Servant §§ 74, 82, 88, 91—The Industrial Commission retains jurisdiction until a final award is entered.**

The Industrial Commission approved an agreement of the parties for the payment of compensation made prior to the filing of any medical report and prior to the time the employee returned to work. Thereafter the employee returned to work after a medical report had been made answering the question of whether the accident resulted in permanent disability with question marks. Upon returning to work, the employee was assigned other duties at reduced wages because of disability preventing her from sitting for long periods of time. The employee remained under the care of a physician for some eight months, at which time she was discharged, and the physician filed an additional medical report stating that the employee had sustained a ten per cent permanent disability as a result of the accident. The employee, upon learning of the final report some seven months after it had been delivered to the car-

rier, requested a hearing. *Held:* The hearing was not for change of condition and G.S. 97-47 has no application, and since no final award had been made, the Industrial Commission has jurisdiction to award additional compensation for the period from the date the employee returned to work to the end of the healing period, and to award further compensation for partial permanent disability thereafter.

**7. Master and Servant § 90—**

The fact that an employee has accepted a check marked as final payment of temporary total disability does not estop the employee from prosecuting a claim for partial permanent disability when the employee has signed no "closing receipt".

APPEAL by plaintiff from *Crissman, J.,* November 1959 Term, of GUILFORD (High Point Division).

This is a proceeding under the Workmen's Compensation Act, G.S. 97-1 *et seq.*

Claimant: Lucille Pratt, employee.

Defendants: Central Upholstery Company, Inc., employer, and Textile Insurance Company, insurance carrier.

Employer and employee are subject to and bound by the provisions of the Workmen's Compensation Act. On 29 April 1957 claimant was injured by accident arising out of and in the course of her employment. Her average weekly wage at the time of injury was $73.07. Defendants admitted liability and they and employee entered into an agreement on Industrial Commission form 21, pursuant to which compensation was to be paid at the rate of $32.50 per week beginning 7 May 1957 and "continuing for legal weeks." The agreement was approved by the Commission on 20 May 1957.

Employee suffered injury to the coccyx (tail bone) in falling on a concrete floor. Surgery was necessary. A coccygectomy was performed and the distal two segments of the tail bone were removed.

On 12 August 1957 Dr. Schafer submitted to carrier on I. C. form 25 a medical report outlining procedures including the coccygectomy and answered the question, "Has this accident resulted in any permanent disability?", with three question marks. This report was approved by the Commission on 20 August 1957.

Under Dr. Schafer's instructions claimant returned to work for defendant employer on 19 August 1957, but was unable to perform her regular duties for the reason that she could not sit for a long period of time. She was assigned other duties that permitted her to stand while working. For more than a year she continued in jobs that could be performed while standing.

Claimant remained under the care of Dr. Schafer. He examined and treated her on fifteen occasions from 23 September 1957 to 3

April 1958. She reached the end of the healing period and was discharged from the doctor's care on 3 April 1958. On 4 April 1958 Dr. Schafer prepared an additional report on form 25, and stated that the accident resulted in permanent injury to claimant because of loss of coccyx, she has ten percent permanent disability of the spine, and she may require further treatment. This report was received by carrier on 8 April 1958. It was approved by the Commission on 20 November 1958.

Claimant, during the period from 19 August 1957 to 3 April 1958, because of the injury had partial incapacity for work and earned an average of $60.60 per week. Impairment of her wage-earning capacity was $12.47 per week.

As a result of the injury claimant has ten percent permanent loss of use of her back.

The last payment of compensation was made to claimant on 19 August 1957 by check dated 16 August 1957. There was a notation on the check: "Final payment of temporary total disability."

About two weeks before claimant returned to work carrier's adjuster told her that carrier would advise her in the event Dr. Schafer gave her a permanent disability rating. She had no knowledge of the permanent disability rating until November 1958. Carrier then advised that her claim was barred by statute.

On 25 November 1958 claimant by letter requested a hearing. The request was received by the Commission on 2 December 1958. Hearing was held 13 April 1959 before Deputy Commissioner Thomas.

After finding the facts above related, the Deputy Commissioner concluded that the Commission has jurisdiction, the claim does not involve a "change of condition" and is not barred by G.S. 97-47, she is entitled to additional compensation which has not been adjudicated, she is entitled to compensation of $7.48 per week for the period from the date of her return to work to the end of the healing period, and $10.00 per week for 300 weeks beginning 4 April 1958 for partial permanent loss of use of her back. The Deputy Commissioner entered an award accordingly.

Defendants appeal to the Full Commission. By award of a divided Commission, it was concluded that claimant's incapacity to earn her former wages constitutes a "change of condition" and her claim is barred by G.S. 97-47 since it was filed more than a year after final payment under the agreement. Compensation was denied.

On claimant's appeal to Superior Court the Commission's award was affirmed. Claimant appealed and assigned error.

*Harold I. Spainhour for plaintiff, appellant.*
*Charles W. McAnally for defendants, appellees.*

MOORE, J. There are no exceptions by any of the parties to the findings of fact by the Deputy Commissioner and they are final and conclusive. G.S. 97-86. *Winslow v. Carolina Conference Association,* 211 N.C. 571, 582, 191 S.E. 403. Claimant's exception to the judgment below raises the question: Do the facts found support the judgment? *Wyatt v. Sharp,* 239 N.C. 655, 658, 80 S.E. 2d 762; *Rader v. Coach Co.,* 225 N.C. 537, 539, 35 S.E. 2d 609. So our inquiry is whether the findings of fact support the legal conclusion that employee's claim for additional compensation is barred by G.S. 97-47 and the award denying compensation.

The pertinent provisions of G.S. 97-47 are as follows: "Upon its own motion or upon application of any party in interest on the grounds of a *change in condition,* the Industrial Commission may *review any award,* and on such review may make an award ending, diminishing or increasing the compensation *previously* awarded . . . but no such review shall be made after twelve months from the date of the last payment of compensation pursuant to an award under this article . . . ." (Emphasis ours).

Decision here requires answers to three questions: (1) Was there a full and final award of all compensation to which claimant was entitled by virtue of her initial claim? (2) If not, has claimant waived her right to a final award of compensation? (3) Do the facts found disclose a change of claimant's condition prior to her final request for hearing?

Defendants admitted liability and entered into an agreement with employee on I. C. Form 21 for payment of compensation. This agreement was approved by the Commission. When, pursuant to G.S. 97-82, an agreement by employer and employee is submitted to the Commission for approval, the judicial authority of the Commission is invoked. In the process of considering and approving the agreement the Commission is engaged in a judicial act. An approved agreement becomes an award of the Commission enforceable by a court decree. G.S. 97-87. *Biddix v. Rex Mills,* 237 N.C. 660, 663, 75 S.E. 2d 777.

An examination of the agreement signed by employer and employee and approved by the Commission is necessary to an understanding of the problem here presented. The agreement was introduced in evidence both by claimant and defendants and its contents will be given the same effect as if stipulated. It admits liability on the part of employer, states that employee injured the "lower end of spine," and

declares that payment of compensation at the rate of $32.50 per week shall begin 7 May 1957 and continue "for legal weeks." It shows that the first payment was received 20 May 1957. Paragraph 7 of the agreement provides spaces for showing the date of return to work and the wages earned upon return to work. These spaces are blank. The agreement was approved by the Commission 31 May 1957. G.S. 97-82 provides that the memorandum of agreement (form 21) submitted to the Commission for approval shall be "accompanied by a full and complete medical report." No medical report was submitted to the Commission with the agreement. The agreement was approved by the Commission two months and nineteen days before claimant returned to work and without a medical report having been submitted. It was approved at a time when the post-coccygectomy condition of claimant had not been determined with sufficient definiteness to form the basis for a complete determination of all employee's right to compensation. G.S. 97-82 and I. C. Form 21 contemplate that the agreement will not be finally approved and compensation determined until the Commission has before it a *full* and *complete* medical report. "An accident resulting in compensable injuries to an employee . . . gives only one right of action or claim to the employee, and an award made should, within the statutory limits, compensate for the disability, irrespective of the number of elements which go to make up the disability." *Smith v. Red Cross*, 245 N.C. 116, 119, 95 S.E. 2d 559. The Commission is not in a position to make a proper award, approve an agreement, until the extent of incapacity and permanent impairment, if any, are determined. The Commission did not have in hand a full and complete medical report until November 1958.

The approval of the agreement on 31 May 1957 was an adjudication that employer was liable for such compensation as employee was entitled to receive under the Act, the date when compensation began, the amount of weekly payments for temporary total disability, and nothing more. It was only a preliminary and interlocutory award. It does not purport to fix and determine the full amount of compensation to which employee was entitled. It does not contain sufficient information from which the Superior Court could have entered judgment in accordance with the provisions of G.S. 97-87. The blank spaces in paragraph 7 of the agreement indicate that employee had not returned to work and the extent of partial incapacity and permanent disability, if any, had not been determined. After the approval of the agreement on 31 May 1957 the action was still pending for a final award. "A claim for compensation lawfully constituted and pending before the Commission may not be dismissed without a hearing

and without some proper form of final adjudication. No statute of limitations runs against a litigant while his case is pending in court." *Hanks v. Utilities Co.,* 210 N.C. 312, 320, 186 S.E. 252.

It is true that there is a presumption that disability ends when the employee returns to work. *Tucker v. Lowdermilk,* 233 N.C. 185, 189, 63 S.E. 2d 109. But this is a presumption of fact and not of law. This Court has held that a rebuttable presumption may not under certain circumstances be weighed against the evidence. *In re Will of Wall,* 223 N.C. 591, 596, 27 S.E. 2d 728. The facts found conclusively establish in this case that employee had partial incapacity during the healing period after her return to work and partial permanent loss of use of her back. The parties are bound by these findings and the presumption is without weight.

The employer had knowledge from the date of claimant's return to work that she did not have capacity to earn her former wages. From the doctor's report of 12 August 1957 employer, carrier and the Commission knew that the healing period had not ended and the amount of permanent disability, if any, had not been determined. The inquiry relating to permanent disability in the doctor's report, I. C. Form 25, had been answered with three question marks. This could have but one meaning — the doctor had not yet been able to make the determination. From the doctor's report of 4 April 1958 employer and carrier knew that employee had ten percent permanent loss of the use of her back. Carrier withheld this information from claimant and the Commission for more than seven months. We conclude that carrier hoped to find acquittal in G.S. 97-47.

Claimant's action was pending for final award. She promptly asked for a hearing when she learned the content of the doctor's report of 4 April 1958. She had done nothing to waive her right to a proper and final award. The acceptance and endorsement of the check dated 16 August 1957 does not constitute a waiver or estoppel. The notation on the check, "Final payment of temporary total disability," is not and does not purport to be final payment of the additional compensation to which she was entitled. It is significant that claimant was not requested to sign a closing receipt, I. C. Form 27. A closing receipt purports to be a final settlement and indicates that no further compensation will be paid unless request for hearing for change of condition is made within a year from date of the receipt. It states: "The use of this form is required under the provisions of the Workmen's Compensation Act." *Smith v. Red Cross, supra.* Rule XI(3) promulgated by the Commission pursuant to G.S. 97-80 provides that "no agreement for permanent disability nor any closing receipt will

be approved until all medical reports in the case have been filed with the Commission." Claimant did not sign a closing receipt. Had she signed such receipt with the approval of the Commission it would have acquitted the employer. G.S. 97-48(b).

It all comes to this: The agreement presented to the Commission invoked the judicial authority of the Commission, a preliminary and interlocutory award was made by approval of the agreement, there has been no final determination of compensation, and claimant has not waived her right to such adjudication. The Commission does not exceed its authority when it retains jurisdiction for futher adjustments pending final award. *Branham v. Panel Co.*, 223 N.C. 233, 238, 25 S.E. 2d 865. G.S. 97-47 is inapplicable if there has been no final award. *Biddix v. Rex Mills, supra,* at page 666.

But it is asserted that there was a change in claimant's condition within the meaning of G.S. 97-47. No case decided by this Court has come to our attention in which the factual situation here involved has been termed a "change of condition." Change of condition "refers to conditions different from those existent when the award was made; and a continued incapacity of the same kind and character and for the same injury is not a change of condition . . . the change must be actual, and not a mere change of opinion with respect to a pre-existing condition." 101 C.J.S., Workman's Compensation, sec. 854(c), pp. 211-2. Whether there has been a change of condition is a question of fact; whether the facts found amount to a change of condition is a question of law. Change of condition is a substantial change, after a final award of compensation, of physical capacity to earn and, in some cases, of earnings. *Hill v. DuBose*, 234 N.C. 446, 67 S.E. 2d 371; *Knight v. Body Co.*, 214 N.C. 7, 197 S.E. 563; *Smith v. Swift & Co.*, 212 N.C. 608, 194 S.E. 106. Changes of condition occurring during the healing period and prior to the time of maximum recovery and the permanent disability, if any, found to exist at the end of the period of healing are not changes of condition within the meaning of G.S. 97-47.

It is our opinion, and we so hold, in the instant case that G.S. 97-47 does not bar employee's claim in that, at the time she requested a hearing there had been no final award of compensation which could be ended, increased or diminished by review, no change of condition was involved, and she had not waived her right to a final adjudication.

We observe parenthetically that the equities are strongly in favor of employee.

Our decision here is factually distinguishable from the cases cited by appellees. In *Smith v. Red Cross, supra,* employee returned to

work two months after the accident at the same wage she was receiving prior to the injury, she signed a closing receipt (Form 27) when she returned to work, and she worked regularly for more than a year before filing claim for permanent disability. "The agreement . . . approved by the Commission . . . (and) the *closing receipt* by plaintiff employee more than a year prior to filing application . . . puts the case beyond the time given by G.S. 97-47 . . ." (Emphasis ours). Other cases are: *Tucker v. Lowdermilk, supra* (closing receipt and recurrence of temporary total disability after return to work); *Paris v. Builders Corp.,* 244 N.C. 35, 92 S.E. 2d 405 (lump sum settlement for permanent partial disability, followed by change of condition more than a year later); *Smith v. Swift & Co., supra* (partial permanent disability awarded following temporary total disability, later employed by different employer, increase in wages shows change of condition after final award); *Lee v. Rose's Stores, Inc.,* 205 N.C. 310, 171 S.E. 87 (recurrence of disability nearly two years after return to work).

The judgment below is reversed and the cause is remanded to Superior Court that judgment be entered directing the Industrial Commission to award compensation in compliance with G.S. 97-31 and the facts found and proceed to a conclusion of the cause as provided by the Act.

Reversed and remanded.