EVIDENTIARY RULINGS
The objection raised by defendant's counsel on page 15 of the April 17, 1996 deposition of Dr. Dianne L. Scott, is hereby OVERRULED. Dr. Scott, as a physician and expert in the management of chronic pain is qualified to express an opinion on plaintiff's employability.
The October 31, 1995 office notes of Dr. Robert Lincoln are ADMITTED.
 ***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award:
The Full Commission finds as fact and concludes as matters of law the following, which were agreed upon by the parties in an Industrial Commission Form 21 Agreement for Compensation for Disability, approved by the Industrial Commission on April 23, 1991, and the Set of Stipulations with exhibits which was filed on August 21, 1996, and at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer on August 7, 1990.
3. The plaintiff sustained an admittedly compensable injury on or about August 7, 1990 at which time plaintiff's average weekly wage was $499.38, yielding a compensation rate of $332.94 per week. The parties stipulate that defendants paid plaintiff compensation for disability through June 25, 1991. In addition, defendants paid plaintiff compensation at the rate of $332.94 per week from June 25, 1991 through February 16, 1993.
4. The parties stipulate the documents attached to the Set of Stipulations as Exhibit A may be admitted into evidence as evidence of communications between counsel and the Industrial Commission.
5. The parties stipulate plaintiff's Form 33 dated February 21, 1995 and defendant's Form 33R dated April 10, 1995, which are contained in the Commission's file, into evidence as documentation of filings made on behalf of the respective parties but not as substantive evidence of the statements contained herein.
6. The parties stipulate that the Industrial Commission may refer to the contents of its file in order to determine (1) when plaintiff sought approval for medical treatment for which defendants have denied authorization and (2) when plaintiff filed her claim for additional benefits based upon an alleged change of condition.
7. The parties stipulate the Form 28B dated March 24, 1993 and contained in the Commission's file into evidence as a document submitted by defendants for filing with the Industrial Commission but not as substantive evidence of the statements contained therein. The parties further stipulate that plaintiff's counsel returned plaintiff's copy of the Form 28B dated March 24, 1993 to defendants because of plaintiff's contention that the filing of that form was inappropriate.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following
 FINDINGS OF FACT
1. Plaintiff sustained an admittedly compensable back strain on August 7, 1990 while attempting to lift a patient during her employment as nurse by the defendant hospital. Defendants paid plaintiff temporary total disability compensation pursuant to an I.C. Form 21 through June 25, 1991; and in addition, paid plaintiff temporary total disability compensation pursuant to an I.C. Form 26 for "recurrent TTD" at a rate of $332.94 per week from June 25, 1991 through February 16, 1993. Pursuant to the Opinion and Award for the Full Commission filed on April 12, 1994, the full text of which is incorporated herein by reference, defendants were allowed to discontinue payment of temporary total disability benefits to plaintiff as of June 25, 1991 and defendants were allowed a credit for the compensation paid to plaintiff from June 25, 1991 through February 16, 1993. The Full Commission further ordered defendant to provide vocational rehabilitation services to plaintiff and ordered plaintiff to cooperate. The Full Commission also ordered defendant to provide continuing medical treatment to plaintiff as recommended by plaintiff's doctors.
The Full Commission's Opinion and Award filed April 12, 1994 concluded as follows:
 Plaintiff retains the capacity to earn some wages in some employment. Plaintiff's exaggeration of her complaints and her failure to put forth an honest effort at therapy and at the only job interview she went to, were tantamount to refusal to cooperate with defendants' vocational rehabilitative efforts, such [that] she is not entitled to further compensation under N.C. Gen. Stat. § 97-29 from June 25, 1991, the date of the Form 24 Application to stop payment of benefits.
This Opinion and Award suspended the defendants' payment of temporary total disability benefits to plaintiff only for the period of her failure to cooperate with vocational rehabilitative efforts, commencing June 25, 1991. Suspension should have ceased when plaintiff's conduct changed and she cooperated with those vocational rehabilitative efforts ordered by the Industrial Commission. Therefore, this is not a "change of condition" case.
2. At the time of the most recent hearing, July 10, 1995, before former Deputy Commissioner Pittman, plaintiff, who was sixty-five years old, had not been employed since she last worked for the defendant in 1991 (November 16, 1990 was actually the last day plaintiff worked). Plaintiff has not sought employment since May of 1992 because, she testified, "she could not work."
3. Defendants' last payment of compensation to plaintiff was made by check issued on February 17, 1993 and cashed by plaintiff on February 18, 1993. Defendants tendered to plaintiff an I.C. Form 28B on March 24, 1993, asserting that the claim was closed. Plaintiff's counsel returned the original I.C. Forms 28B to defendants by letter dated April 1, 1993 because plaintiff believed the form was inappropriate since the case was then on appeal to the Full Commission.
4. In a letter dated April 7, 1993, counsel for defendant again tendered the Forms 28B, but asked only "that [plaintiff's counsel] treat this as a yearly report." In the same letter, defense counsel declined to submit medical bills for payment to the defendant-carrier, unless they were for "authorized" treatment, and further refused to authorize the plaintiff's continued treatment at Duke. The only treatment that has been authorized at any time since 1991 is with Dr. Robert Lincoln, whose records as far back as April 15, 1991, clearly state that he had "nothing more to offer her," and would not make a return appointment for plaintiff.
5. Therefore, in June of 1991, plaintiff sought treatment at Duke University Medical Center where Dr. Dianne Scott diagnosed plaintiff with degenerative arthritis and treated plaintiff with non-steroidal anti-inflammatory medications, an anti-depressant and low dose narcotics.
6. Following the original hearing on May 6, 1992, plaintiff continued to complain of chronic body pain and chronic low back pain. Plaintiff's primary complaints to Dr. Scott since 1992 up to the July 10, 1995 hearing have been diffuse body pain, significantly in her low back and hip area. In an October, 1992 deposition, Dr. Lincoln testified that he had assigned plaintiff a 15% permanent partial disability rating. Plaintiff never received a second opinion as to this rating and no hearing has ever been held, nor has any agreement been executed, on the question of permanent partial disability. Plaintiff has never been paid compensation for permanent partial disability.
7. Due to plaintiff's complaints of tremendous, ongoing pain, and per Commissioner Ward's letter of September 6, 1994, defendants scheduled plaintiff for a return appointment with Dr. Lincoln on October 26, 1994. However, plaintiff did not keep the appointment due to Dr. Lincoln's negative attitude toward her. Defendants then authorized plaintiff to consult with another physician, Dr. Lee Whitehurst, in Raleigh. However, plaintiff was unable to see this physician because of lack of transportation to Raleigh.
8. Plaintiff brought a claim for additional benefits based upon a change in condition on an I.C. Form 33 dated February 21, 1995 and filed February 23, 1995. It is not necessary for plaintiff to prove a change of condition in this case because plaintiff's entitlement to compensation for her admittedly compensable injury of August 7, 1990 was still pending. Since the Opinion and Award of the Full Commission "discontinued" payment of temporary total disability benefits and ordered defendant to provide and plaintiff to cooperate with vocational rehabilitation services, and, further, failed to address the issue of permanent partial disability compensation or a rating for plaintiff, it is clear that all of the compensable consequences of plaintiff's claim were not resolved and her claim was still pending. Defendant's attempt to close the case unilaterally through the filing of an I.C. Form 28B is not legally justifiable or binding upon the Commission. Moreover, in the alternative, the I.C. Form 33 seeking a review of the plaintiff's claim was filed in sufficient time, in any event, since it was filed within two years after the Full Commission's April 12, 1994 Opinion and Award was entered in this case.
9. In an earlier Opinion and Award by the Full Commission filed April 12, 1994, the Commission found and concluded that plaintiff did not have the capacity as a result of her injury to earn the same wages in the same employment, but she did have the capacity to earn wages in some other employment.
10. As a result of plaintiff's refusal to cooperate with vocational rehabilitation, plaintiff's temporary total disability compensation was suspended and plaintiff was ordered to cooperate with vocational rehabilitation. Defendant was ordered to continue medical treatment and physical therapy recommended by plaintiff's doctors. Among the doctors who were treating the plaintiff prior to the time of this decision, and whose testimony was considered in the 1994 Opinion and Award, were Dr. Dianne Scott, Dr. Allen Friedman and others at Duke, as well as Dr. Alan Spanos, Dr. Robert Lincoln and others.
11. Since February, 1993, the defendants, who have paid nothing for plaintiff's medical treatment since 1991, have consistently refused to pay for any medical treatment recommended by any of the plaintiff's treating physicians, except Dr. Lincoln. However, Dr. Lincoln has indicated that he is not willing to treat plaintiff. Defendants have not offered or provided plaintiff any rehabilitative services, vocational or otherwise; and have not offered plaintiff re-employment. Nor have the defendants given any explanation of what action the plaintiff could take to bring an end to the suspension of her temporary total disability benefits.
12. From March of 1993 until February 21, 1995 when the plaintiff filed her I.C. Form 33 requesting a review of her case, the plaintiff repeatedly requested treatment and the defendant consistently refused, except to say that she could return to Dr. Lincoln, and on one occasion to say that she could be seen by Dr. Lee Whitehurst in Raleigh. At the hearing, plaintiff indicated she would go to either doctor, if defendants would provide transportation.
13. Because of the defendants refusal to provide the treatment recommended by the plaintiff's physicians (Dr. Dianne Scott and others at Duke, and Dr. Kenneth Banks, among others), or to restart her disability benefits after defendants made no effort to provide vocational rehabilitation as ordered by the Full Commission's Opinion and Award of April 12, 1994, plaintiff filed a request for hearing February 23, 1995. In her I.C. Form 33, the plaintiff indicated that she was claiming additional temporary total disability benefits in that she had complied with all requests that she attend medical and vocational services and that she was entitled to have the defendants pay for her ongoing medical treatment, in accordance with the 1994 Award of the Commission.
14. The 1994 Opinion and Award for the Full Commission in this case specifically ordered that the defendant provide "any continued medical treatment or physical therapy recommended by plaintiff's doctors." Her doctors at that time included Dr. Dianne Scott and others at Duke as well as Dr. Alan Spanos. To date the defendants have refused to provide any treatment or therapy recommended by these doctors, and have refused to reimburse such treatment in accordance with the 1994 award.
15. Accordingly, the deputy commissioner's finding and conclusion that the plaintiff's treatment at Duke since 1991 was "unauthorized" and that she did not seek approval of such treatment for more than three years, are contrary to the previous determination of the Full Commission, and contrary to the competent evidence presented on this issue.
16. There was nothing in the 1994 award to indicate that the Commission's approval of treatment was limited to only one of the named physicians, or that the defendants had any right to interfere with or veto the plaintiff's treatment, which was ongoing at Duke at the time of the 1994 award. Dr. Scott and Dr. Allen Friedman at Duke both testified in the litigation leading up to the 1994 award, and were clearly among the treating physicians at that time.
17. The appropriate course of action for defendants, in light of the fact that the Commission had ordered the defendants to provide any (emphasis added) treatment recommended by the plaintiff's treating physicians, was to file a motion for clarification of the Full Commission's Opinion and Award or allow plaintiff to continue treatment with any of her known treating physicians. The only witnesses who addressed this issue were Dr. Dianne Scott, at Duke University Medical Center, who had been treating the plaintiff since December 1991, and Dr. Kenneth Banks, plaintiff's family doctor since 1981. At her 1996 deposition, Dr. Scott addressed plaintiff's treatment as of the period subsequent to her previous deposition in 1992.
18. Since July of 1992, Dr. Scott has been treating the plaintiff with a combination of a non-steroidal anti-inflammatory, an anti-depressant, and a low-dose narcotic, together with physical therapy, biofeedback, and the back school. It was Dr. Scott's opinion that as long as plaintiff keeps her medication and the other aspects of her treatment, she can maintain and even improve her ability to cope with her pain.
19. In 1996, Dr. Scott was of the opinion that the plaintiff was not likely to have been employable since July of 1992, because she has too many flare-ups of her back pain. The plaintiff's two treating physicians testified without equivocation that the plaintiff had not been able to work since the date of the last hearing in July of 1992.
20. Dr. Kenneth Banks, who testified that he had been plaintiff's family physician since 1981, testified that he considered the Duke doctors to be the ones managing the treatment of her back, and that in his opinion the treatment was appropriate, although the plaintiff was not getting any better.
21. Dr. Lincoln, the defendant's choice for plaintiff's "treating" physician, did not see the plaintiff from November 1991 until her appointment October 31, 1995. At this appointment, which was attended by both the plaintiff and her counsel, Dr. Lincoln specifically stated that he did not wish to see the plaintiff, that he was not willing to examine the plaintiff, and he did not. Dr. Lincoln refused to look at medical records or x-rays from Duke which were brought to the appointment by counsel and offered to the doctor. He asked no questions of the plaintiff or of counsel, but told them that she should continue with whatever they were doing at Duke.
22. Accordingly, his note, to the extent it addressed the plaintiff's condition subsequent to the last time he actually examined her in 1991, is accorded no weight. He had insufficient information from which to render an opinion on plaintiff's current need for medical treatment.
23. The only competent evidence, from physicians who had actually examined and treated the plaintiff since 1992 was from Dr. Scott and Dr. Banks. Based on that evidence, plaintiff continued to need medical treatment of the kind provided at Duke.
24. The defendant presented two witnesses at the hearing, Ms. Lynn Downs and Ms. Catherine Whisenhunt. Ms. Downs testified that she was the recruitment manager for the defendant hospital, and testified that there were monitor tech positions available for which the plaintiff could apply. Ms. Downs acknowledged that she knew plaintiff had been terminated by the defendant from their employment roster in May, 1993, but claimed she would be "eligible for rehire." She went on to testify that she knew nothing of whether the plaintiff's physical restrictions would permit her to do the job.
25. Neither Ms. Downs nor Ms. Whisenhunt was able to say that the plaintiff would be hired, and there was no evidence that she was offered a job. To the contrary, the evidence was that the defendant had terminated the plaintiff, although both witnesses claimed not to know the reason for her discharge. They claimed she could re-apply, but nobody testified that she would be hired.
26. In addition, the records of the defendant's in-house physician, Dr. Elaine Hart-Brothers indicated that as of the last time she examined the plaintiff, December 10, 1991, her "restrictions [were] pending", and Dr. Hart-Brothers declined to release the plaintiff to return to work. Further, Dr. Lincoln stated several times in his notes, letters and by deposition, that the plaintiff was not a candidate for employment, should be placed on disability, and that he would not hire her.
27. The defendants have not demonstrated that plaintiff is employable and that suitable employment is available to her or has been available to her since she was last employed.
28. Plaintiff's refusal to cooperate with vocational rehabilitation efforts ended April 12, 1994 when she was ordered by the Industrial Commission to cooperate and did not appeal from that decision. Defendants' failure to provide vocational rehabilitation thereafter is not evidence of continuing refusal on the part of plaintiff.
29. Plaintiff is entitled to resumption of temporary total disability compensation on April 12, 1994, subject to the credit awarded defendants in the Opinion and Award of the Full Commission on April 12, 1994.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff is not required to show a change of condition under N.C. Gen. Stat. § 97-47 because her temporary total disability compensation had only been suspended. Consequently, the issue of the extent of her permanent disability had never been determined. The controlling principle of law here was enunciated by the Court of Appeals in Beard v. Blumenthal Jewish Home,87 N.C. App. 58, 359 S.E.2d 261 (1987); citing Pratt v. CentralUpholstery Co., 252 N.C. 716, 115 S.E.2d 27 (1960). In that case, the Court stated unequivocally that the N.C. Gen. Stat. § 97-47
provisions regarding a "change of condition" did not apply where the plaintiff had been paid temporary total disability benefits pursuant to an I.C. Form 21 for "necessary" weeks, and where the issue of permanency was not addressed. Plaintiff's case, currently before the Commission, is not distinguishable from Beard
in any meaningful respect. The 1994 decision of the Full Commission in the instant case on its face is open-ended. The Award clearly anticipated that there should be future medical and vocational services provided by the defendant, and that a future determination of the extent of plaintiff's loss of wage-earning capacity would have to be made. According to the Court of Appeals' decision in Sanhueza v. Liberty Steel Erectors,122 N.C. App. 603, 471 S.E.2d 92 (1996), an award ceasing benefits for non-compliance with vocational efforts may not be a permanent termination of benefits. Rather, such an order may merely suspend benefits until the plaintiff comes into compliance. As a matter of law, therefore, the plaintiff's claim was still pending on this issue, as well as the unaddressed issue of permanency.
2. Plaintiff's refusal to cooperate with vocational rehabilitation efforts ended on April 12, 1994 when plaintiff was ordered by the Full Commission to cooperate; and plaintiff did not appeal from that order. Defendants' subsequent failure to provide vocational rehabilitation estopped the defendants from claiming that plaintiff's refusal continued.
3. Plaintiff is entitled to and defendants are obligated to provide plaintiff such medical treatment as is reasonably required to effect a cure, provide relief and/or lessen her disability. Offering Dr. Lincoln who has refused to treat plaintiff as plaintiff's only choice of a treating physician is not reasonable and violated the prior order of the Full Commission.
4. Plaintiff is entitled to continue treatment for her compensable injury with Dr. Scott and any other physician to whom plaintiff is referred by Dr. Scott.
5. There was no evidence of any particular job available or offered to the plaintiff, within her restrictions, that she would be hired to do. Evidence that there was one job plaintiff could apply for, with an employer who had already fired her and with whom she has been litigating for five years, does not meet the defendant's burden to rebut plaintiff's presumption of continuing disability. Saums v. Raleigh Community Hospital, 346 N.C. 760,487 S.E.2d 746 (1997).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall resume payment of temporary total disability compensation at the rate of $332.94 per week, beginning April 12, 1994 and continuing until further order of the Industrial Commission. Such amount which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney fee approved below.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of accrued compensation due plaintiff under paragraph one of this Award shall be deducted from the sum to be paid plaintiff and shall be paid directly to plaintiff's counsel; and, thereafter, plaintiff's counsel shall directly receive every fourth check due plaintiff.
3. Plaintiff's request for approval for her treatment with Dr. Scott at Duke University Medical Center and any other physician to whom she is referred by Dr. Scott is hereby APPROVED. Defendants shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of her compensable injury when bills for same have been submitted to defendants and approved pursuant to procedures established by the Commission, including treatment by Dr. Banks, Dr. Scott and other physicians at Duke University Medical Center.
4. Defendants shall bear the costs of this proceeding, and shall pay Dr. Kenneth Banks an expert witness fee of $155.00.
 S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________ THOMAS J. BOLCH COMMISSIONER
S/ _________________ LAURA K. MAVRETIC COMMISSIONER