The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some modification. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Defendant is a duly qualified self-insured and the claims administrator is Educator Benefit Services.
4. Plaintiff's average weekly wage at all relevant times was $218.63, yielding a compensation rate of $145.76.
5. Plaintiff sustained a compensable back injury arising out of and in the course and scope of her employment with defendant-employer on 3 December 1991.
6. The parties stipulated to the admission of the following medical records into evidence:
a. Records of Dr. Irl Wentz (46 pp.)
b. Records of Dr. Christopher Delaney (5 pp.)
c. Records of Dr. Ralph Diflore (2 pp.)
7. The issues to be resolved are:
 a. Did plaintiff undergo a change of condition pursuant to N.C. Gen. Stat. § 97-42 on 16 February 1995?
b. If so, to what benefits is plaintiff entitled?
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDING OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a thirty-five year old female resident of Swansboro, North Carolina. She is a high school graduate who received additional education at Carteret Community College. Plaintiff worked as a teacher's assistant and librarian's aide while employed by defendant-employer. Plaintiff has knowledge of computers, and is familiar with word processing and the use of Windows applications. She has worked as a cashier at Monroe Construction and has held other jobs as a secretary. At one time, plaintiff drove a bus for defendant-employer and served in a clerical position with the Coast Guard Reserve. While a resident of Houston, Texas in the 1980's, plaintiff was trained to be a bank teller. Plaintiff is skilled and well-educated.
2. On 3 December 1991, plaintiff sustained a compensable injury by accident while employed by defendant-employer at West Carteret High School. While plaintiff was putting up a bulletin board, the chair broke on which she was standing, resulting in a fall and injuries to her back and legs.
3. Defendant-employer accepted plaintiff's claim as compensable under a Form 21 Agreement for Compensation for disability, approved by the Industrial Commission on 21 July 1992.
4. On 18 June 1993, Dr. Irl J. Wentz gave plaintiff a 7 1/2% permanent partial impairment rating of the back and spine. Defendant-employer paid plaintiff 22 5/7 weeks of compensation at the rate of $145.76 per week for her 7 1/2% permanent partial impairment of the back pursuant to a Form 26 Supplemental Agreement for Compensation approved by the Industrial Commission on 9 August 1993. Defendant-employer thereafter submitted an Industrial Commission Form 28B, showing that the last compensation payment was forwarded to plaintiff on 31 August 1993. This was the final award of compensation by the Industrial Commission.
5. Plaintiff returned to work with defendant-employer and was placed on light-work status with the following restrictions: no lifting greater than ten pounds, no bending, no stooping, and no prolonged standing. Plaintiff performed work within these restrictions as a librarian's aide.
6. Although it is not clear from the testimony precisely when plaintiff returned to her full time duties and was able to perform the duties of the position, she did miss numerous days from work due to complaints of pain.
7. Plaintiff presented to psychiatrist Dr. Christopher S. Delaney on 9 February 1995. Dr. Delaney examined plaintiff extensively and found no neurologic or physiological reasons for plaintiff's pain. Moreover, Dr. Delaney noted "break away behavior". Break away behavior is a volitional release or relaxation of muscles, a release of tension or muscular pressure accomplished by virtue of a decision made by the person executing muscular pressure, rather than nonvolitional or uncontrollable release. Straight leg raising tests were normal, indicating no nerve root compression. There were no structural or anatomic abnormalities. Finally, plaintiff had variation in dermatomal patterns. A dermatomal pattern is a map of the areas of sensation associated with a given nerve root level. It is a biological anatomic description of the human anatomy. Injury to a given nerve root will usually cause loss of sensation in a predictable pattern, and testing in these dermatomes can be useful for identifying the level of injury, or specific nerve root which is involved. There was no consistent evidence of a single injury as plaintiff varied her reports during the course of the testing.
8. The only diagnosis Dr. Delaney made was of chronic pain syndrome, which he defined as: "pain of unclear or of etiology not proportionate to the patient's complaint which has failed traditional treatments, and the treatment program for this usually involves an interdisciplinary approach looking at the biological, pharmacologic and psychological interventions which might be useful to restore function."
9. Dr. Delaney suggested physical therapy treatment and recommended plaintiff refrain from taking prescription pain medication such as Toradol. On 9 February 1995, Dr. Delaney returned plaintiff to work with light duty restrictions.
10. When plaintiff returned to work on 10 February 1995, and provided Dr. Delaney's note to the principal Gordon Patrick, he told her there were no light duty positions at the school within her restrictions and advised her to return home.
11. On 14 February 1995, plaintiff received a call from Principal Patrick advising her to return to work, stating that light duty work would be made available by providing plaintiff with assistance in lifting heavy items. Plaintiff returned to work on 15 February 1995.
12. On 16 February 1995, plaintiff was working in the library organizing and shelving books, when she experienced a sharp stabbing pain in her back. She alleges that she was not able to fully straighten her body as a result of the pain.
13. Plaintiff has not been consistent in her description of the incident on 16 February 1995 which she alleges effected a substantial change in her physical condition and her ability to earn wages. Plaintiff was unable to identify to Dr. Delaney any single event or conditions which related to her increased back pain. Plaintiff complained to Dr. Wentz that her legs fell out from under her.
14. On 16 February 1995, plaintiff was seen by orthopedist Dr. Irl J. Wentz. Plaintiff reported her left knee had given way while she was walking. Initially, Dr. Wentz wrote that plaintiff had "sustained a changed condition." However, plaintiff did not report any different symptoms than she had previously. She had no objective physical changes from those exhibited previously. Moreover, Dr. Wentz's diagnoses did not change from what they had been previously, and Dr. Wentz did not assign any additional permanent impairment rating to plaintiff's back on or subsequent to 16 February 1995. Plaintiff continued to have the same light duty restrictions previously issued by Dr. Wentz.
15. On 15 May 1995, Dr. Wentz wrote a note taking plaintiff out of work for an indefinite period of time. He wrote, "one year?" Dr. Wentz wrote this note based on the fact that plaintiff was getting ready to be approved for State funded short term disability benefits. If plaintiff had not been on the verge of being approved for short term disability, Dr. Wentz would have considered it appropriate for plaintiff to continue in a light duty position with defendant-employer. Dr. Wentz did not change plaintiff's restrictions.
16. Plaintiff has continued to treat with Dr. Wentz subsequent to 15 May 1995. As of 14 July 1995, plaintiff's back and neck condition remained the same. Plaintiff has continued to present to Dr. Wentz with ongoing complaints about both upper and lower back pain (27 February and 23 April 1997). However, as of 7 October 1996, plaintiff's back status has remained unchanged.
17. From 18 March 1995 until 18 March 1996, plaintiff received short term disability benefits in the amount of $545.00 per month. Plaintiff applied for State funded long term disability benefits. Plaintiff did not look for other work between 18 March 1995 and 18 March 1996, despite her physical capacity for employment within the restrictions outlined by Dr. Wentz. The Deputy Commissioner observed at the hearing, that despite plaintiff's continuing and variety of complaints, that she sat erect, unmoving and unswerving during over eighty minutes of testimony before the Deputy Commissioner. The Deputy Commissioner did not find plaintiff's complaints of pain to be credible. The Full Commission declines to overrule the credibility determination by the Deputy Commissioner.
18. Plaintiff was approved on a preliminary basis for state disability retirement benefits. She received these benefits retroactive from the date that she applied, 18 March 1995, until 18 March 1996. She received retirement benefits in the amount of $545.00 per month for twelve months. Since March of 1996, plaintiff has attempted to get approval for permanent state disability retirement benefits and at the time of hearing before the Deputy Commissioner was still in the process of submitting additional medical documentation.
19. In August of 1996, when her State benefits ended, plaintiff expressed a desire to work again with defendant-employer. Plaintiff was advised by Assistant Superintendent John Welmers that she could not work for Carteret County Schools because at that time there were no positions available within the restrictions provided to the school by her physician, Dr. Wentz.
20. Although plaintiff has continued to be able to work within the restrictions provided by her treating physician, she has not looked for work since August of 1996.
21. Subsequent to approval of the Form 26 Supplemental Agreement for Compensation, plaintiff has had no physical or symptomatic changes affecting her physical capacity to earn wages. Neither plaintiff's physical condition nor the nature of her complaints have changed since 16 February 1995.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to meet her burden of proving a change of condition. While there have been periods of time subsequent to the approval of the Form 26 Supplemental Agreement for Compensation and the filing of the Form 28B during which plaintiff has not worked, plaintiff has not proven that such periods of unemployment were the result of a change in condition affecting her physical capacity to earn wages. N.C. Gen. Stat. § 97-47; Pratt v. Central Upholstery Co., Inc., 252 N.C. 716,115 S.E.2d 27 (1960).
2. Plaintiff has not proven a change in condition; therefore, she is not entitled to further benefits under N.C. Gen. Stat. § 97-29 or N.C. Gen. Stat. § 97-30.
3. Plaintiff is entitled to such medical compensation as may reasonably be required to effect a cure, give relief or lessen her period of disability. N.C. Gen. Stat. § 97-25; Hyler v. GTE Products Co., 333 N.C. 258, 425 S.E.2d 698
(1993).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for additional benefits pursuant to a change in condition is hereby DENIED.
2. To the extent reasonably necessary to effect a cure, give relief or lessen plaintiff's period of disability as a result of her 3 December 1991 admittedly compensable back injury, defendant-employer shall provide medical compensation to plaintiff when bills for the same have been submitted by the defendant-carrier and approved by the procedures adopted by the Industrial Commission.
3. Each side shall pay its own costs.
This the _____ day of June 1998.
 S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ RENÉE C. RIGGSBEE COMMISSIONER
LKM:jth