***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named.
4. Plaintiff's average weekly wage is $260.00.
5. Plaintiff sustained a compensable injury by accident on or about 26 March 1998, with the exact date to be determined by the Industrial Commission.
6. The issues for determination before the deputy commissioner were: (a) whether plaintiff is entitled to temporary partial disability, temporary total disability and/or permanent partial disability after 13 July 1998; (b) whether plaintiff is entitled to ongoing medical treatment for injuries sustained in the compensable injury by accident of 26 March 1998; (c) whether plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1; and (d) does the Commission lack jurisdiction over plaintiff's claim for indemnity benefits and/or a change of condition pursuant to N.C. Gen. Stat. § 97-47.
7. In addition, the parties stipulated the following: (a) Industrial Commission Forms; (b) discovery responses; and (c) plaintiff's medical records.
 ***********
Based on the foregoing stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 36 years old and living in Garfield, New Jersey. Plaintiff finished the 11th grade.
2. On 24 March 1998, plaintiff was employed by defendant-employer hotel as a groundskeeper. His duties consisted of maintaining the exterior presence of the hotel, including clean-up, grounds maintenance and some repair work.
3. Plaintiff's average weekly wage was $260.00, yielding a weekly compensation rate of $173.34.
4. On 24 March 1998, plaintiff injured his back while loading sandbags onto a seawall. He was taken to the hospital by his boss and diagnosed with an acute low back strain. He was told to rest flat on his back, provided with medication and instructed to undergo physical therapy.
5. Plaintiff's claim was accepted as compensable by defendants on a Form 60 filed on 13 October 1998.
6. Plaintiff remained out of work following his injury and presented to Seaside Medical on 1 April 1998 where he was treated by Kathy Walker, PA-C. His examination revealed lumbosacral tenderness with associated paraspinous muscle tenderness and he was diagnosed with lumbosacral pain and muscle spasms. Plaintiff underwent x-rays on 1 April 1998, which showed no indication of an acute or subacute compression fracture, and the intervertebral disc space heights were determined to be within normal limits. He was given additional medication and was placed on light duty restrictions for one week and referred to physical therapy. His physical therapy began on 2 April 1998.
7. Upon referral from the PA-C, plaintiff presented to Dr. Henry Lepore on 18 April 1998, complaining of pain radiating down his left lower extremity, which increased with sitting, standing and walking. Dr. Lepore diagnosed plaintiff with discogenic pain. He recommended an EMG nerve conduction study and a caudal epidural block. He continued plaintiff's physical therapy.
8. On 21 May 1998, Dr. Lepore noted that plaintiff was making slow progress in physical therapy but required continuation of the process. The EMG revealed a L4 radiculopathy, and Dr. Lepore wrote plaintiff out of work for an additional six weeks. On 22 May 1998, plaintiff underwent the first caudal epidural block, with an additional block scheduled for two weeks later.
9. On 20 June 1998, Dr. Lepore noted that plaintiff experienced some relief from the caudal blocks and could lift up to 35 pounds. Plaintiff still had some tenderness over the L4-5 processes bilaterally. Dr. Lepore opined that plaintiff could return to work on 9 July 1998 with a 75 pound lifting restriction. Plaintiff was instructed to use an abdominal binder at work and to take frequent rest breaks. Plaintiff was advised to return for follow up treatment in one month.
10. Plaintiff was released from physical therapy on 26 June 1998, and was assessed to have attained approximately 90% of his goals. It was noted in the release that plaintiff had not attained complete relief and it was not anticipated that he would, but that he had achieved maximum benefit from physical therapy.
11. Plaintiff returned to work for defendant-employer on 9 July 1998, but he testified that due to continuing back pain, which was aggravated by his job duties, he resigned to find less strenuous work. Dr. Lepore did not remove plaintiff from his job with defendant-employer. Plaintiff obtained employment with a masonry company. He testified that he quit after four days due to the pain he continued to suffer in his back.
12. Plaintiff returned to Dr. Lepore on 17 August 1998 with recurrent lower back pain. Plaintiff reported that he had complied with the 75-pound weight restriction and continued to wear the back support. Dr. Lepore assessed plaintiff with lumbar radiculopathy possibly secondary to a herniated disc or degenerative joint disease and ordered an MRI. The MRI was performed on 28 August 1998, and showed a moderate left paramedian disc herniation at L5-S1, a small central-right paramedian disc herniation at L4-5, and mild degenerative changes at L3-4 without disc herniation.
13. On 1 September 1998, plaintiff informed Dr. Lepore that he was not getting relief from the medication and was having difficulty sleeping at night. Plaintiff had begun using a TENS unit which provided some relief. Dr. Lepore's examination showed that upon deep palpation of the L-S paraspinal muscles and glutei and calf musculature, plaintiff experienced pain symptoms to the left heel. He reviewed the MRI and noted the two disc herniations shown by the study. He changed plaintiff's medication to Oxycontin and recommended continued use of the TENS unit.
14. Defendants admitted plaintiff's claim on a Form 60 filed 13 October 1998. Defendants stated that plaintiff's disability from his injury began on 25 March 1998 and compensation commenced on 18 April 1998.
15. Prior to his next scheduled treatment with Dr. Lepore, plaintiff obtained new employment and relocated to New Jersey. Plaintiff was hired as a part-time counter salesperson with R S Strauss earning about the same wages as he did with defendant-employer. The job involved only minor occasional lifting and did not aggravate plaintiff's back, although he continued to experience occasional flare-ups of his condition.
16. Following his move to New Jersey, plaintiff began treating with Dr. R. M. Palacios on 4 December 1998. Dr. Palacios noted plaintiff's herniated disc and recommended that he reenroll in physical therapy. Dr. Palacios also discussed the possibility of surgical considerations, but plaintiff refused.
17. Plaintiff continued to treat with Dr. Palacios as needed. He presented to Dr. Palacios' colleague, Dr. McInerney, on 29 January 1999 with severe back pain and spasms in the left paralumbar area. Dr. McInerney wrote plaintiff out of work until 2 February 1999, prescribed Percocet and physical therapy. Plaintiff continued to have marked left radicular pain, but he continued working. Dr. Palacios opined that plaintiff should consider neurosurgical options, but plaintiff continued to refuse surgical options.
18. On 26 March 1999, plaintiff was a passenger in a car involved in an accident. Plaintiff was wearing his seat belt and Dr. Palacios noted that the accident did not cause any additional injuries to plaintiff.
19. Plaintiff left R S Strauss for a job with Pet Land Discount in approximately April 1999. This job was also light duty and did not appreciably aggravate plaintiff's condition. He worked for Pet Land Discount for nearly one year, then left to work for Discount Tire, changing tires. Plaintiff worked at Discount Tire for approximately six months, but the work caused an increase in his back and leg pain. Plaintiff obtained employment as a forklift operator, but left after approximately three months due to an increase in his back pain caused by the job duties. Plaintiff then began driving a small truck delivering garments. Plaintiff was required to load and unload the stock, but did so one hanger at a time; consequently, there was minimal lifting required. In all of plaintiff's employments, he earned the same or greater wages than he earned during his employment with defendant-employer.
20. Plaintiff continued to treat with Dr. Palacios during this time. He received a series of epidural blocks with limited success. After plaintiff's third block, Dr. Palacios noted that plaintiff could not continue to receive blocks as regular treatment, and again discussed the option of surgical intervention, which plaintiff continued to refuse.
21. By March 2000, plaintiff was managing his chronic pain with medications. Dr. Palacios discussed with plaintiff the fact that he still had two herniated discs with radicular symptoms that required treatment, but plaintiff did not wish to pursue surgical options. Plaintiff had a follow-up examination with Dr. Palacios on 23 May 2000. Plaintiff was instructed to return to Dr. Palacios as needed.
22. On or about 13 August 2000, plaintiff began working for Armor Deck, driving a truck from 4:00 a.m. until 6:00-8:00 p.m. Plaintiff's duties increased his back pain, but he continued to perform the job.
23. On 23 May 2002, plaintiff returned to Dr. Palacios with increasing low back pain. Plaintiff's x-rays revealed moderate narrowing at L4-5 and L5-S1 with small anterior spondylitic lipping. At the suggestion of Dr. Palacios, plaintiff finally agreed to proceed with surgical options. Dr. Palacios referred plaintiff to Dr. Arash Emami for surgical consultation.
24. Throughout plaintiff's treatment with Dr. Palacios, defendants continued to pay for all medical treatment related to plaintiff's work-related injury; however, defendants refused to pay for plaintiff's evaluation and treatment by Dr. Emami. Plaintiff eventually presented to Dr. Emami on 9 August 2002. He noted that plaintiff had two herniated discs and that he had been undergoing epidural injections, pain management and taking several types of medication since his initial injury of March 1998. He further noted that plaintiff's primary pain was radiculopathic in nature and mostly involved in the left leg. Dr. Emami ordered another MRI to confirm the diagnosis and plan treatment options.
25. The MRI was performed on 26 August 2002 and showed a large central and left disc herniation with associated body ridging at L5-S1, extending into the proximal neural foramen. There was also a diffuse disc bulge at L4-5 and mild broad based central to right disc herniation at L3-4. In his note of 17 September 2002, Dr. Emami opined that plaintiff's current condition was a result of the work-related injury of 1998. Dr. Emami suggested a microlaminectomy and microdiscectomy at L5-S1, but noted that the surgery "would only assist in the radiculopathy nature of [plaintiff's] symptoms and will not help with the back pain." Plaintiff decided to pursue the surgery, which was successfully performed on 13 November 2002.
26. Following the surgery, plaintiff's radiculopathy resolved. By 21 January 2003, Dr. Emami opined that plaintiff could return to light duty work in approximately four weeks. Plaintiff's current employer, Armor Deck, had no light duty available and plaintiff was unable to return to that employment.
27. On 26 March 2003, Dr. Emami released plaintiff to return to work without restrictions. He has not provided plaintiff with a rating, as plaintiff has not reached maximum medical improvement.
28. Defendants did not pay for any medical treatment received by plaintiff after his final visit with Dr. Palacios on 23 May 2002.
29. Plaintiff has been out of work since 12 November 2002.
30. On 6 October 1998, defendant-carrier filed a Form 28 Return to Work Report and a Form 28B Report of Compensation and Medical Compensation Paid with the Industrial Commission. The report stated that plaintiff had returned to work at the same wages as of 9 July 1998, and that the final compensation check was issued on 6 July 1998. The report further stated that plaintiff's final medical compensation was paid on 21 September 1998. The Form 28B incorrectly reported that plaintiff's final medical compensation was paid on 21 September 1998. At the time of the report, defendants knew plaintiff's MRI had revealed that he had two herniated discs, plaintiff was using a TENS unit and narcotic medication for pain relief, and Dr. Lepore had not determined that plaintiff had reached maximum medical improvement. Plaintiff had relocated to New Jersey and as of 6 October 1998, he was seeking defendant-carrier's approval for a treating physician in New Jersey. Defendants' Form 28B did not foreclose plaintiff's right to seek further medical or indemnity compensation in this case.
31. Since plaintiff has not reached maximum medical improvement and he has not been rated, his claim is still pending. Plaintiff does not have to show a change of condition in order to prove entitlement to additional temporary total disability benefits. He does, however, have to show additional disability caused by his compensable injury.
32. On 24 March 1998, plaintiff sustained an injury to his back arising out of and in the course of his employment with defendant-employer as a direct result of a specific traumatic incident of the work assigned. All of plaintiff's medical treatment subsequent to that time up to and including the surgery of 13 November 2003 and the attendant follow-up treatment was causally related to the work-related injury of 24 March 1998 and was reasonably required to effect a cure, provide relief or lessen his disability related to his compensable injury.
33. Dr. Emami took plaintiff out of work as a result of his surgery. As a result of his compensable injury, plaintiff was unable to work from 12 November 2002 through 26 March 2003, when he was released to return to work without restrictions. Plaintiff's disability after 26 March 2003 should be reserved for subsequent determination as the deputy commissioner hearing herein was conducted on 22 April 2003, less than one month after plaintiff's release to return to work and there is insufficient evidence from which to determine whether plaintiff remained totally disabled.
34. Defendants have not defended this action unreasonably or without grounds.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury to his back arising out of and in the course of his employment with defendant-employer as a direct result of a specific traumatic incident of the work assigned on 24 March 1998. N.C. Gen. Stat. § 97-2(6).
2. Defendants accepted plaintiff's claim as compensable, and as a result of the compensable injury, plaintiff was paid temporary total disability compensation for the period from 18 April 1998 through 8 July 1998 in the total amount of $2,030.65. N.C. Gen. Stat. § 97-29.
3. Defendants completed a Form 28B report of compensation paid on or about 6 October 1998. Defendants' response to Item Number 15 stating, "Date last medical compensation paid 09/21/98" was incorrect and should be stricken. Defendants' answer of "Yes" to Item Number 16 in response to whether this report closed the case should also be stricken.
4. The medical treatment received by plaintiff for his back and radiculopathy following his return to work in July 1998 and continuing to the present, including his surgery of 13 November 2002, is causally related to his work-related injury and is compensable under the Act. N.C. Gen. Stat. § 97-25.
5. N.C. Gen. Stat. § 97-47 does not apply to an employee's right to claim medical payments under the Act. The statute allows the Commission to review a prior award only for the purpose of making "an award ending, diminishing, or increasing the compensation previously awarded." (Emphasis added). Because "compensation" does not include the payment of medical expenses, this provision does not affect the Commission's grant or denial of an employee's request for the payment of those expenses. The Commission's authority for requiring an employer to pay the medical expenses of an injured employee is established by the terms of N.C. Gen. Stat. § 97-25, which mandates that certain medical treatments "shall be provided by the employer" and establishes the conditions, which must be present before the Commission, may order the employer to pay for treatments. Hyler v. GTE Prods. Co., 333 N.C. 258, 425 S.E.2d 698 (1993). Therefore, plaintiff's right to continuing medical compensation is not affected by N.C. Gen. Stat. § 97-47.
6. Nor is plaintiff's claim for medical benefits affected by the provisions of N.C. Gen. Stat. § 25.1. Despite the claim on the Form 28B that defendants' final payment of plaintiff's medical expenses occurred on 21 September 1998, the evidence shows that defendants continued to pay for plaintiff's back treatment until after 23 May 2002. N.C. Gen. Stat. § 97-25.1 provides that "the right to medical compensation shall terminate two years after the employer's last payment of medical or indemnity compensation unless, prior to expiration of this period . . . the employee files with the Commission an application for additional medical compensation which is thereafter approved by the Commission. . . ." Plaintiff's claim for further benefits was filed prior to defendants' termination of payment for medical treatment. Therefore, plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, including those expenses incurred after defendants refused to continue paying for medical treatment in May 2002. N.C. Gen. Stat. § 97-25.
7. Plaintiff does not have to show a change of condition in order to be entitled to additional indemnity compensation. Our Supreme Court has held that the award referred to in N.C. Gen. Stat. § 97-47, which the Industrial Commission may not review after two years from the date of the last payment of compensation, means a final award. Pratt v. CentralUpholstery Co., Inc., 252 N.C. 716, 115 S.E.2d 27 (1960). There has been no final award herein to trigger N.C. Gen. Stat. § 97-47 and plaintiff's claim for additional medical compensation and indemnity is not a change in condition within the purview and meaning of N.C. Gen. Stat. § 97-47
and is not time-barred. The courts have been clear in setting forth the conditions that must be met to constitute a final award and to trigger the two-year time limitation of N.C. Gen. Stat. § 97-47. Beard v.Blumenthal Jewish Home, 87 N.C. App. 58, 359 S.E.2d 261 (1987). It is not the receipt of the last payment alone, but the last payment must be pursuant to a "final award." Id. at 62, 359 S.E.2d at 263. Prior to the Industrial Commission making a final award, there must be a finding of maximum medical improvement. The medical records must indicate that plaintiff has reached maximum medical improvement and address whether there is permanent impairment. Without this information, the Industrial Commission is not able to make a proper award. See Pratt, supra. The changes of condition that occur during the healing period and prior to the time of a finding of maximum medical improvement recovery and permanent disability, if any, found to exist at the end of the healing period are not changes of condition within the meaning of N.C. Gen. Stat. § 97-47. Here, defendants attempted to unilaterally close the case by filing a Form 28B in October 1998. Such unilateral efforts by the employer have no effect in foreclosing an employee's right to further compensation. Beard, supra; Scurlock v. Durham County General Hospital,136 N.C. App. 144, 523 S.E.2d 439 (1999).
8. Plaintiff is not entitled to payment by defendants for attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1, as defendants' defense of this claim was reasonable.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $173.42 per week from 12 November 2002 through 26 March 2003.
2. Defendants shall pay medical expenses incurred or to be incurred by plaintiff when bills for the same have been approved, in accordance with the provisions of the Act, including all costs related to plaintiff's surgery of 13 November 2002 and the follow-up treatment.
3. Defendants shall pay a reasonable attorney's fee in the amount of 25% of the compensation approved and awarded plaintiff herein. The attorney fee shall be deducted from the compensation due plaintiff and paid directly to plaintiff's attorney.
4. Defendants shall pay the costs.
 ORDER
IT IS FURTHER ORDERED that:
1. Plaintiff's entitlement to additional temporary total disability or permanent partial disability compensation after 26 March 2003 is reserved for subsequent determination.
2. The following responses of defendants on the Form 28B are STRICKEN: (a) Item Number 15, the response of "09/21/98" as the date of last payment of medical compensation; and (b) Item Number 16 the answer "yes" in response to the question of whether the Form 28B closed the case.
This the ___ day of February 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER